Judge Hitchcock
delivered the opinion of the-court:
The original bill in this case was filed in accordance with section 14 of the act regulating proceeding in chancery. 29 Ohio L. 81. That section provides that “any person having the legal title and possession of lands may file a petition against any other person-setting up a claim thereto; and if the complainant establish his title to said lands, the defendant shall be decreed to release his claim, and pay the complainant his costs, unless the defendant in his answer shall disclaim all title or claim to such lands, and offer to give such release to the complainant, *in which case the complainant shall pay to the defendant his costs, except for special reasons the court shall otherwise decree.” By this section of law a complainant, in order to sustain his bill, must show that he is vested not only with a legal title, but with the actual possession of the land in controversy. This the complainant, Clark, has alleged in his bill, and has attempted to prove by the testimony. But in this there is an entire failure. Even admitting that he has a legal title under the deed referred to in the bill, the evidence shows conclusively that he was never in possession of the land, but that, on the contrary, Hubbard, by himself or tenants, has been in possession since the confirmation of the sale by the court of common pleas in March, 1827. Since that time Hubbard has paid the taxes, as well as the arrearages of taxes- previously due. Clark, then, does not make a case for the interference of this court.
This lead us to examine the case made by the cross-bill. And here we have no hesitation in saying, that Hubbard makes a case for relief, unless his title is postponed to that of Robert Clark. He is in the actual possession of the land, and no valid objection can be made to his title, unless it is on account of Clark’s deed. The purchase at sheriff’s sale appears to have been in accordance with law ; the sale itself was confirmed by a court having jurisdiction ; and the deed was executed in pursuance of an order of that court.
*391 The first and important question-to be considered, is whether the deed of December 20, 1824, from John to Robert Clark, was bona fide, or whother it was fraudulent as against creditors, and consequently void as to such creditors and those connecting themselves with them. The testimony upon this point is not multifarious. It is principally introduced by Clark himself, but still it is quite satisfactory and conclusive. It consists of the answer of Robert Clark, the deposition of John Clark, certain letters passing between John and Robert Clark, a letter of Stephen Colwell ádmitted as evidence, the deed itself, and a transcript of the judgment and execution, under which Hubbard made his purchase.
This transcript of record.shows that a judgment was recovered by the administrators of one Lynn against John Clark at the June term of the court of common pleas of Belmont county, 1819, on which sundry executions were issued to different counties and small sums made. On April 15, 1826, an execution *was issued on this same judgment, directed to the sheriff of Guernsey county, which was levied on the land in controversy, and the land subsequently sold. From this, it is apparent that to the amount of the balance due on this judgment at least, John Clark was indebted on December 20, 1824, the day of the date of the deed. Whether he was indebted beyond this does not appear in the testimony.
Robert Clark, in his answer to the cross-bill, or rather in his original bill, which he makes a part of this answer, says, that the consideration for this deed was agreed at §400. That a part of this §400 was made up of a note and account in which John Clark was at the time indebted to-him, and on which was due §195, and that the balance has been paid to John Clark since the said deed was executed. In the answer, he says he was mistaken as to this $195, but does not point out the manner in which the mistake occurred. He refers to an account filed with this answer as showing a true statement of the dealing between himself and brother John, and says, that upon settlement it was found that the land had been more than paid for by §30. This account appears to have been rendered and the settlement made in 1832, and there is one charge for goods in October, 1831, amounting to $90.
The deed bears date December 20, 1824; is acknowledged January 2, 1825, and recorded in 1831.
John Clark testified, that “ he is a brother of Robert Clark; he *392 is acquainted with the land which is the subject of this suit; he owned it once.” He then refers to three letters, one from Eobert to himself, dated Juue 10, 1822; and two from himself to Eobert, dated, one March 17th and the other March 28, 1823. He says that there wore other letters, two of which he recollects ; but does not state when written, or what they contained. That he heard that his brother was sick, not likely to live, and that he took the deed with him and went to Brownsville, where his brother resided. That the deed was executed in Belmont county before he went to Brownsville. That he offered the deed to Eobert, who requested him to bring it to Ohio, and have it recorded. That when he returned to Ohio, he handed it to Stephen Colwell, Esq., to have it recorded, who through some neglect or mistake did not get it recorded. That afterward it came into his possession with a bupdle of papers which Colwell had left in the hands of Mr. Peet. Between 1814 and 1822, he *had dealings with Eobert. When Eobert rendered his account, which was between 1820 and 1822, he, John, fell in debt between $300 and $400, without interest; with interest, more than $400. Included in said account was a promissory note, which he had forgotten, but which he recognized when he saw his handwriting thereto when it was presented. The note was dated in 1814. The consideration for the land was this account and interest, but considerable interest was thrown away. Shortly after deponent received the deed from Peet, a son of Eobert called and took it to get it recorded. Afterward, deponent received a power of attorney and $30 to attend to the land. He thinks that in 1824 or 1825, Hubbard inquired of him if he did not own land in Guernsey county, and he replied that he did not that was clear of dispute. That after Hubbard purchased, he told him, Clark, of the purchase, and that he replied that he had no right to buy, because he knew that he, Clark, did not own the land. On cross-examination, he says that he received the note referred to in 1832, which was the first time he had seen it after its execution. Does not know that Robert furnished him with but one statement of the account, which was in 1832, showing that an amount of interest was due which he threw away. The interest would make the account near $500. Does not recollect whether the deed was written after the message came from Brownsville. Eobert Clark was not able to attend to business after deponent got to Brownsville, but was able to converse with him and tell him what *393 to do. Deed was not delivered. Robert told deponent to take it and have it recorded. No accounts were looked over at the time; Robert was too unwell. Had no further communication with Robert about the land until the time the power of attorney came on, which was between 1830 and 1832. William B. Hubbard was attorney for deponent in the case in favor of Lynn’s administrators. Deponent knew that he was indebted to his brother Robert, but had forgotten the note.
I have been thus particular in stating the testimony of this witness, because, extraordinary as it certainly is, it is the principal testimony relied upon by Robert Clark to,sustain his answer and his case.
Colwell’s letter is of no further importance than it goes measurably to contradict the testimony of John Clark. Clark states that he handed the deed from himself to Robert, to Colwell to fcget it recorded. Colwell states that he has no recollection of ever having seen the deed, or of ever having had it in possession.
The copy of record, in the case of Lynn’s Admr’s v. Clark, shows that Hubbard was the attorney of the plaintiff, and of course Clark is at least mistaken in saying that Hubbard was his attorney in that case.
The deed bears date on December 20,1824, and is acknowledged on January 5,1825. Still, John Clark does not remember whether it was written before he received inlormation of the sickness of his brother or not. If written afterward, and if upon its date it shows the time when written, he would have been in no great haste to visit a sick and dying brother, as he must have delayed fifteen days between the signature and acknowledgment of the deed, both of which purport to have taken place in the. county of Belmont. These circumstances serve to raise a suspicion that the memory of this witness is, to say the least of it, somewhat treacherous.
But it may be well to examine this evidence a little more particularly. Robert Clark, in his original bill which constitutes a part of his answer to his cross-bill, says that the whole consideration for. this land was.$400 ; $195 of which was'due from his brother to him on note and account at the time the deed was executed. The witness, this same brother, says that the indebtedness was between $300 and $400, including the interest more than $400, and that apart of the interest was thrown away. A part of this indebtedness was by note, executed by him in. 1814, and which he had forgotten un *394 til it was shown to him, when he recognized his signature. This indebtedness was, as the witness says, the consideration of the deed. And this amount of indebtedness was ascertained when the account was rendered and a settlement made. Now here is a material discrepancy between the answer and testimony. In the answer, Robert Clark does not claim that his brother owed him but .$195 when the deed was executed, but the brother insists that it was more than $400. Robert claims that this indebtedness constituted but a part of the consideration. John insists that it constituted the whole.
Robert Clark is careful to state that this note, so often referred to, had been given up; that an account had been rendered, and settlement made. It becomes important to inquire when this took *place. In his examination in chief, John Clark says that this account was rendered .between 1820 and 1822, and that the note constituted a part of the account, and a part of the consideration of the land. On his cross-examination he says he does not know that.his brother ever'furnishod him with but one statement of the account, which was in 1832, and at the same time the note was given up to him, which he had not until then seen after it was executed, and had entirely forgotten its existence. If wo are to credit this witness, a note which he did not know was in existence until 1832 constituted a part consideration of a deed which he executed in 1824!
This witness further states that from the time the deed was executed until between 1830 and 1832, there was no further communication between himself and brother about this land. This is a little extraordinary if there had in fact and truth been a bona fide sale, when it is considered that the only pretended consideration was an open and unsettled account, and which was not closed until 1832.
Another circumstance is worthy of remark: If Robert Clark became the purchaser of this land, it would have been reasonable for him to have paid the taxes. But it was not done. They were in arrears, and paid by Hubbard after his purchase at sheriff’s sale.
But it has been urged in argument that the letters exhibited in evidence, furnish presumptive proof of the fairness of the transaction. In these letters, it is true, something is said about land, but this is not the principal subject of correspondence. Nor is *395 there anything in them approximating to a contract. The last of them was written in the latter part of March, 1823, almost two years before the deed was made. And there is no evidence to show that there was anything further passed between the parties respecting land until the deed was executed.
There is one more circumstance worthy of consideration: In 1824 or 1825, Hubbard inquired of Clark, according to Clark’s testimony, whether he had not land in Guernsey county. Clark replied, not that he had no land, but that he had none which was not in dispute. At this time Clark must have known that he had not paid up the judgment to'Lynn’s administrators, and he must have known, too, that Hubbard was the attorney for the plaintiffs, although he might have forgotten it when he gave his deposition. About this same time, John Clark makes this deed to his brother Eobert, lying, as he would have us believe, at the point of death, *and then rests quietly for eight years before he ascertains whether he is indebted to that brother to the extent of the estimate value of the land or not.
Taking all these circumstances into consideration, the court can have no doubt that this conveyance was made for the purpose of defeating creditors of their dues. It is, therefore, fraudulent and void as to those creditors, and as to Hubbard, who purchased at sheriff’s sale, under a judgment in favor of one of those creditors.
Such being the opinion of the court, it is unnecessary to examine the other points made in the case.
Hubbard is entitled to á decree.