PARMELIA L. STONE et al. v. A. B. PERKINS and DALE PERKINS, Appellants.

Division Two, March 30, 1909.

1. **PATENTS FROM COUNTY: Superior Title: Notice.** Where plaintiffs through *mesne* conveyances claim title from the patentee of the county whose patent, by the commissioner in its behalf, was issued and recorded in 1869, and all the subsequent deeds were duly recorded, and defendants through *mesne* conveyances claim title from a patentee of the county whose patent was issued in 1892, plaintiffs have the superior paper title. The county at the time of issuing the last patent had full notice of the issuance of the prior one.

2. **EJECTMENT:** *Former Adjudication as Bar.* A judgment in ejectment pure and simple is not a bar to another ejectment for the same land between the same parties. So that where plaintiffs brought a plain action of ejectment against defendants in the United States court, and defendants' answer was a general denial, a judgment for defendants in that suit is no bar to a subsequent ejectment in the State court by the same plaintiffs or by their heirs or devisees or their grantees against the same defendants for the same land.

3. **QUIETING TITLE: Limitations.** Where the legal paper title is in plaintiffs they are entitled to the legal seizin and possession unless defendants establish title by adverse possession for ten years.

4. ———: ———: *Continuous Possession: Presumption.* The possession must not only be adverse but continuous and uninterrupted, and shown to be continuous by facts. Even if the building of a house and the putting of a tenant therein start the Statute of Limitations to running, and even if the presumption of law is allowed that adverse possession once shown to exist is presumed to continue until the contrary is shown, that presumption must yield to facts and is only indulged in the absence of facts to the contrary, and is wholly dissipated by a showing that all actual possession was abandoned within a year or two after it began.

5. ———: ———: ———: ———: **After Former Judgment in Ejectment.** The judgment in favor of defendants in March, 1893, in the suit in the Federal court brought by the same plaintiffs against the same defendants, did not have the effect of vesting the lawful possession in defendants, and did not furnish a basis for a presumption that a temporary possession begun ·by them prior thereto continued down to the filing in October, 1903, of the petition in this suit to quiet the title.

6. ———: ———: ———: ———: **Constructive Possession: Color of Title: After Former Judgment in Ejectment.** A contention that the possession by defendants under color of title,—namely, their possession under a junior patent from the county, taken subsequently to and with full notice of a prior patent under which plaintiffs have the paper title,—may be discontinued after a month or a year, and that thereafter the constructive possession of the land would follow their color of title instead of the true title, and that after ten years the real owners would be barred by the statute, is not allowed, but is contrary to the established law. And that is the law where defendants' adverse possession was begun under their invalid junior patent, but was abandoned after a few months when plaintiffs began suit in ejectment in the Federal court, and was renewed through another tenant after a judgment in that case in favor of defendants, and their adverse possession is now predicated alone upon that judgment and their prior temporary occupancy of a part of the land and the presumption that this possession was thereafter continuous.

7. **QUIETING TITLE: Trial by Court: Peremptory Instruction.** The trial of title under section 650, Revised Statutes 1899, is for the court and not for a jury; and hence an instruction declaring that plaintiffs' prior legal title must be sustained, not-

withstanding a temporary occupancy for a few months by defendants, could in no manner have affected the rights of the parties.

8. ————: ————: **Instruction: Comment on Evidence.** An instruction which contains a comment on the evidence, but strictly within the evidence, in a trial before the court, could have misled no one.

9. **ADVERSE POSSESSION: Payment of Taxes: Cutting Timber.** The payment of taxes and the cutting of timber from the land do not constitute adverse possession, but only tend to show claim of ownership.

10. **QUIETING TITLE: Damages for Cutting Timber: Misjoinder: Waiver.** Any misjoinder by plaintiff in one count of a claim for damages for the wrongful cutting of timber off of plaintiff's land, with a prior count to determine the title, being a matter that appears on the face of the petition, is waived by failure to demur.

11. ————: ————: **Trespass: Constructive Possession.** Where plaintiff has the legal title to land not in the actual possession of another he is presumed to be in possession so as to maintain trespass against the wrongdoer, and to recover damages from defendants for cutting timber therefrom. And a prior judgment in ejectment in favor of defendants in the Federal court, if in this suit to quiet title it was no bar to plaintiff's right to possession as the rightful owner of the legal title, does not forestall plaintiff's right to maintain the trespass.

12. ————: ————: ————: **Assignment.** Where plaintiff bought the interest of his co-tenant in the land, and on cross-examination testified that he had an assignment from her of her interest or cause of action against defendants for their wrongful cutting of timber from the land prior to her conveyance, and no written assignment is preserved in the record, although it does recite that plaintiff offered in evidence a bill of sale, which is not preserved, and no objection was made to the form of proof of the assignment, defendants are not in a position to complain on appeal that there was no proof of assignment.

13. **JUDGMENTS: Quieting Title: Trespass: Separate Entries.** The suit was in two counts, one to quiet title, and the other in trespass for damages for the wrongful cutting of timber thereon, and the court entered judgments on the two counts on different days. *Held*, that the two entries may be and should be treated as one final judgment, in the light of sections 694 and 773, Revised Statutes 1899. The circuit court may administer both legal and equitable rights and remedies in the same action and is armed with discretionary powers to direct separate trials where the nature of the issues on the

pleadings require them.  However, it would have been better for the court to have made its findings on the first count, and deferred entering judgment thereon until it had tried the second count, and then to have entered   one final judgment.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort*, Judge.

AFFIRMED.

*N. A. Mozley* and *Ralph Wammack* for appellants.

(1)   The petition in the suit in ejectment in the United States court filed by plaintiffs' grantor, W. B. Stone, avers that defendant, Perkins, and one John Ware went into actual possession of the land on the 4th day of January, 1893.  The petition for injunction, filed at the same time, by the same plaintiff, against the same defendants and in the same court, likewise charges defendant, Perkins, and said John Ware with having entered into the actual possession of the land on said date.  The answer of defendant, Perkins, in said injunction suit alleges that he did go into the actual possession of said land, not on the 4th day of January, 1893, but on the 17th day of December, 1892; that he went in under his title, in good faith, holding the possession as his own, and that said John Ware was in possession as his tenant and not otherwise.  The proof in the case at bar shows, without contradiction, that he did take actual possession, on said date, under his title, erect a dwelling-house thereon and put said John Ware in possession.  From these averments charged to be true by plaintiffs and admitted and proven to be true by defendants and adjudged to be true by the United States court, we respectfully submit as an established fact in the case at bar, that defendant did take actual possession of said land, under his title, in good faith, on the 17th day of December, 1892, and began holding the same as his own, adversely to the world.  Applicable to this fact, defendants in-

voke the following propositions: (a) Coincident with
defendants' possession of the land on the 17th day
of December, 1892, under claim and color of title, the
Statute of Limitations began to run in his favor. (b)
The adverse possession of defendants on the 17th day
of December, 1892, being an undisputed fact, the law
presumes the continuance of such adverse possession.
Tiedeman, Real Prop., sec. 700; Greenl. Ev. (13 Ed.),
sec. 41; Clements v. Lampkin, 34 Ark. 598. (c) Before
defendants' possession can be interrupted or the run-
ning of the Statute of Limitations in his favor inter-
fered with, plaintiffs must establish by a preponder-
ance of the evidence at least one of the following facts:
1st. That defendants were legally ousted of the pos-
session by plaintiffs before the expiration of ten years
from the date of their entry, or, 2d, that the defendants
were holding the possession in subordination to plain-
tiffs' title, or, 3d, that defendants, short of the expira-
tion of ten years from the date of their entry, volun-
tarily abandoned the possession. There is no pretense
of a legal ouster of defendants, or that defendants
held the possession in subordination to plaintiffs' claim
of title, nor do the facts of this record show an aban-
donment of the possession by defendants. Hickman v.
Link, 116 Mo. 123; Scarritt v. Railroad, 148 Mo. 676.
(d) Adverse possession in Missouri is determined by
the character and situation of the land and the uses
to which the owner may wish to subject it. Benne
v. Miller, 149 Mo. 482; Hickman v. Link, 97 Mo. 228.
The uncontradicted proof in this case shows that the
land in question is swamp and overflowed and not sus-
ceptible of any occupation other than that to which
defendants subjected it. The uncontradicted proof
also brings the defendants squarely within the doc-
trine announced in the cases of Benne v. Miller, and
Hickman v. Link, supra. And actual knowledge on
the part of Stone that Perkins was holding the land
under claim of title would seem to dispense with actual

visible possession of the land by Perkins. Key v. Jennings, 66 Mo. 367; Leper v. Baker, 68 Mo. 407; Cook v. Farrah, 105 Mo. 502; Goltermann v. Schiermeyer, 111 Mo. 422, 125 Mo. 302. (2) The court erred in overruling defendants' pleas of former adjudication. Black on Judg., sec. 517; 24 Am. and Eng. Ency. Law (2 Ed.), 781; Lafoon v. Fretwell, 24 Mo. App. 258; Carlisle v. Howes (Ky.), 43 S. W. 191. The conclusiveness of a judgment, as between the parties to it, is not confined to the entire matter litigated, but includes the finding of any facts which were in issue, and were necessarily decided. State ex rel. v. Branch, 134 Mo. 592; Brown v. Railroad, 96 Mo. App. 164; Cromwell v. County of Sac (U. S.), 24 L. Ed. 195.

*James E. Reese* with *Keaton & Keaton* for respondents.

(1) The county of Stoddard, the common source of title, conveyed the true legal title to this land by its special commissioner, Alfred Eltzroth, to Lewis M. Ringer, by its patent, dated April 28, 1869, duly recorded May 10, 1869, and this true title passed by *mesne* conveyances to his grantees, mediate and immediate, down to and including respondent, Samuel F. Campbell, as innocent purchasers. Simpson v. Stoddary County, 173 Mo. 421. (2) The true legal constructive possession of the land passed to and vested in Lewis M. Ringer by virtue of his true legal title, the patent, with the conveyances of this true legal title to his grantees, mediate and immediate, down to and including respondent, Samuel F. Campbell, without a break or hiatus, except by the wrongful temporary possession of John Ware for two months and a few days by disseizin under color of title in A. B. Perkins, which ended forever in March, 1893, and the legal constructive possession immediately returned to and vested in the owner of the true legal title. Turner v. Baker, 64 Mo. 245; Bradley v. West, 60 Mo. 41; Sell

v. McAnow, 158 Mo. 471. (3) The county had no
title to convey and conveyed no title to A. B. Perkins,
December 16, 1892, by the patent. Machine Works v.
Bowers, 200 Mo. 234. And all claiming under this
second patent took with full notice. And respondents
and their grantors are innocent purchasers under the
prior patent. Simpson v. Stoddard County, supra.
(4) The contention of appellants, "That a possession
under color of title may be discontinued after a month
or a year, and that, thereafter, the constructive posses-
sion of the land would follow the color of title instead
of the true title," and after ten years the true owners
would find themselves barred by the Statute of Limita-
tions, is in the very teeth of the law. Lynde v. Wil-
liams, 68 Mo. 370; Brown v. Hartford, 173 Mo. 192;
Gordon v. Park, 202 Mo. 247. Carter v. Hornback,
139 Mo. 245; Herbst v. Merrifield, 133 Mo. 270. (5)
The court did not err in overruling defendants' plea
of *res judicata* of the judgment in ejectment in the
U. S. Circuit Court in the case of Stone v. Perkins.
Smith v. Jameson, 91 Mo. 19; Henan v. Wade, 74 Mo.
App. 340; Charles v. White, 112 S. W. 546; Kimmel
v. Benna, 70 Mo. 65. The case of Stone v. Perkins
was a suit in ejectment and the plaintiff failed in his
action. Snell v. Harrison, 131 Mo. 503; Speed v.
Railroad, 163 Mo. 111; Kimmel v. Benna, supra;
Crowe v. Crowe, 195 Mo. 345. The difference
is clearly explained in Pence v. Gabbart, 63
Mo. App. 308, and Home Life Ins. Co. v. Sherman,
46 N. Y. 372; Leet v. Gratz, 124 Mo. App. 405. The
title of Stone "was entirely unaffected by the judg-
ment against him, the plaintiff, in the U. S. Circuit
Court. Stone's title remained in full force and effect
as though the suit in ejectment had never been com-
menced." Board of Trustees v. Fry & Woods, 192 Mo.
561. (6) The trees and timber standing and growing
on the land at the time sold by A. B. Perkins to Nim-
mons and Bennett were a part of the land, and be-

longed to respondent and his grantor, the true owners of the land. Nimmons and Bennett had no title or even color of title and no possession whatever. The pretended lease was nothing but a bill of sale for the timber. Andrews v. Costican, 30 Mo. App. 31; Lead Co. v. White, 106 Mo. App. 233. A. B. Perkins had no title nor any possession whatever, actual or constructive, and the sale and license to take the timber dated April 25, 1898, by whatever name it may be called, conveyed no title to the timber to Nimmons and Bennett. So, Nimmons and Bennett were trespassers under license at the instance and for the benefit of A. B. Perkins, for which A. B. Perkins, the principal trespasser, was liable to respondent, S. F. Campbell, through Campbell's assignment from his grantors. Dreyer v. Ming, 23 Mo. 436; Alred v. Bray, 41 Mo. 487; State v. Valle, 164 Mo. 551; Potter v. Everett, 40 Mo. App. 159; Breuster v. Fox, 117 Mo. App. 722; Morgan v. Pott, 124 Mo. App. 378. The cause of action set out in the second count of the petition accrued when Nimmons and Bennett took the timber from the land from and after October 26, 1898. Lead Co. v. White, 106 Mo. App. 233. (7) The assignments were both duly executed and in writing, but they would have been valid if they had only been verbal, and were full protection for appellant, A. B. Perkins, against any future action against him for the same cause of action. Doering v. Kenamore, 86 Mo. 589; Guerney v. Moore, 131 Mo. 668; Gay v. Orcutt, 159 Mo. 406; Roth v. Wire Co., 92 Mo. App. 262; Chouteau v. Boughton, 100 Mo. 410; Childs v. Railroad, 117 Mo. 433.

GANTT, P. J.—This is an action under section 650, Revised Statutes 1899, made returnable to the March term, 1904, of the circuit court of Stoddard county, wherein the plaintiffs allege in their first count that

217 Sup—38

they are the owners in fee simple of all of section 9 of township 23 of range 12 in Stoddard county, Missouri. They allege that the defendants claim to have some title, estate and interest in and to said lands adverse to the title of plaintiffs and they pray the court to ascertain and determine the title and interest of the plaintiffs and the defendants respectively in and to said real estate and to adjudge and decree the title of the plaintiffs therein and to declare the defendants' claim a cloud upon plaintiffs' title and to remove the same. In the second count plaintiffs state that on or about the first day of October, 1896, and on divers days and times thereafter, the defendants without leave wrongfully entered upon said section of land and did hire and command other persons to enter into and upon said premises and did then and there cut down and destroy and carry away and convert to their own use timber and trees of the value of three thousand dollars to the damage of the plaintiffs in the sum of three thousand dollars, for which plaintiffs pray judgment.

In their answer defendants deny that the plaintiffs are the owners in fee of the south half of the southeast quarter, of the northwest of the southeast quarter, and the west half of section 9 in township 23, range 12, containing 440 acres and being a part of the land described in plaintiffs' petition. They denied that they had trespassed upon said land and admitted that they claim title to the same and that their claim is adverse to the claim of plaintiffs. They aver that they are the owners in fee simple and claim the title to the above-described 440 acres, and that they have been in the actual possession thereof from the 17th of December, 1892, to the present date, and disclaim all title or ownership to the remainder of said land in said section 9 as aforesaid. Further answering the defendants state that on the 17th of December, 1892, the defendant A. B. Perkins acquired title by mesne

conveyances from Stoddard county to said real estate and immediately entered into the possession of the same and that on the 4th of March, 1893, W. B. Stone, the ancestor of the plaintiffs and plaintiffs' grantor, brought suit against A. B. Perkins and John Ware in the circuit court of the United States in the Eastern Division of the Eastern District of Missouri to recover possession of said real estate and for damages on account of cutting and removing the timber therefrom, being the same cause of action set forth in the petition of the plaintiffs herein, and in said action upon a trial of said cause on its merits judgment was rendered by said court, on the 21st day of March, 1898, in favor of the defendants therein. Defendants further answering plead the ten-year Statute of Limitations, and for answer to the second count of plaintiffs' petition defendants pleaded, first, a general denial, and, second, a plea of both the five-year and the ten-year Statute of Limitation. And in answer to this second count defendants also pleaded that on the 4th of March, 1893, W. B. Stone, under whom plaintiffs claim, brought suit against the defendants therein in the circuit court of the United States for the Eastern Division of the Eastern District of Missouri for eight thousand dollars damages on account of cutting and removing timber from the land described in said second count of the petition and upon the trial upon the merits judgment was rendered by the court in favor of the defendants, therefore the defendants prayed judgment. There was a reply denying all the new matter pleaded in the defendants' answer.

The evidence on both sides tended to establish that the land in dispute was what is known as swamp and overflowed lands, which had been given by the United States by act of Congress, September 28, 1850, to the. State of Missouri; and by the State of Missouri, by the several acts of the General Assembly, in the years 1851, 1853, 1855 and 1857, were donated to Stoddard

county. In 1869 Stoddard county executed a deed by its commissioner to the lands in suit to Louis N. Ringer, and plaintiffs acquired this Ringer title by mesne conveyances. On the 16th of December, 1892, Stoddard county by patent conveyed this land to J. S. Miller, and on the 17th of December, 1892, Miller conveyed the same by quitclaim deed to the defendant A. B. Perkins for an alleged consideration of $1,100. This deed and patent were duly recorded in the recorder's office of said county on the 11th of January, 1893. At that time the evidence tended to show the land was vacant and not in the possession of any one, but on the 17th of December, 1892, the defendant A. B. Perkins erected a building thereon and put one John Ware in it as his tenant. At the May term, 1893, of the United States Court for the Eastern Division of the Eastern District of Missouri, W. B. Stone, plaintiffs' ancestor and immediate grantor, holding at that time whatever title plaintiffs now have, instituted two actions against the defendant Perkins and his tenant John Ware, one in ejectment to recover the possession of the land in suit, and another by injunction to restrain them from cutting the timber from the land pending the action of ejectment. At the return term of that writ Perkins and Ware filed their answers, which were general denials. In 1898 a trial was had in the United States Circuit Court which resulted in a judgment for the defendants in the ejectment case (See Stone v. Perkins, 85 Fed. 616), and the temporary injunction which was ancillary to the action of ejectment was dissolved. On March 22, 1898, A. B. Perkins and wife conveyed the land in suit to their son Dale Perkins, and on April 25, 1898, A. B. Perkins sold the timber of said land to Nimmons and Bennett and gave them until January 1, 1900, to remove all of the white oak from said land, in consideration of two thousand dollars, which timber the evidence tended to show they did cut and remove to a large extent from and after October 26, 1898. The

evidence further shows that Jerry Tramble, about the
year 1891, cleared two and one-half acres of the land
in section 9 and cultivated it for about two years, and
that after that Tramble sold his holding or claim to
Kitterman and gave him a quitclaim deed therefor,
and Kitterman took possession and his testimony was
to the effect that during the last fifteen years no person
had been in the actual possession of any portion of this
land except himself and Tramble. The evidence as to
Ware's possession was to the effect that A. B. Perkins
built a house on the land and put Ware in possession
thereof to hold for him. Ware remained thereon until
the injunction suit, when he abandoned the same, and
the house was removed therefrom about two months
after Ware had gone into possession. · After that
Perkins had no other person in actual possession of
the land or any portion thereof. Samuel F. Campbell,
one of the plaintiffs, testified that he found Tramble on
the land and told him to hold the land for W. B. Stone
in 1897; there was no written lease, but Campbell told
Tramble to stay there, and when they got the title
settled they would sell him forty acres of the land. On
December 24, 1902, defendant Dale Perkins brought an
action of ejectment against Kitterman for the posses-
sion of the premises and under the rule of the court
the parties were required to file an abstract of the title
under which they claimed, and the defendant Perkins,
as plaintiff in that suit, filed the same abstract of title
through the patent to J. S. Miller, which A. B. Perkins
had filed in the ejectment suit in the United States
Circuit Court, being the same that W. B. Stone brought
in the United States Circuit Court in the case of Stone
v. Perkins. This action was tried in September, 1903,
and plaintiff Perkins dismissed his ejectment suit. In
1893 Perkins took possession of the land through his
agents and was cutting the timber off of it when he was
stopped by the injunction. In 1904 plaintiffs began
this action. Plaintiff Campbell derived his title to the

one-half interest by purchase from Carrie E. Thurber under a power to sell contained in the will of Nathan T. Thurber of date September 1, 1903. This summary of the evidence is a sufficient basis for a discussion of the rights of the parties involved in this suit.

I. It will be observed that the county of Stoddard is the common source of title of both plaintiff and defendants. And the plaintiffs deduce their title to this land through the patent made by Stoddard county through its special commissioner, Alfred Eltzroth, to Louis M. Ringer, April 28, 1869, and that patent was duly recorded May 10, 1869, and Ringer's title by mesne conveyances was conveyed to W. B. Stone on May 30, 1888, and the deed of the latter was duly recorded July 7, 1888, whereas the defendant's paper title is deduced through the patent of Stoddard county to J. S. Miller, December 16, 1892. So that there can be no sort of doubt under the decision of this court in Simpson v. Stoddard County, 173 Mo. 421, that the plaintiffs by their conveyances from Stone held the superior paper title to the land in suit. The defendants claim title under the patent from Stoddard county to Miller in 1892 when the county had already disposed of the title to Ringer with full notice of Ringer's title at the time. So that as to the first count under section 650 it is only necessary to determine the effect of the ejectment action brought by Stone against Perkins in 1893 in the United States Circuit Court for the Eastern District of Missouri. It is insisted by the defendants that the judgment in that case, being for the defendants, estops the plaintiffs from claiming title at this time. As already seen, that was a plain action of ejectment in the United States Court and the answer was a general denial, and there was a judgment for defendants. There was no equitable defense relied upon in that case, and it is a settled law of this State that a judgment in ejectment pure and simple is not a bar to

another action in ejectment for the same land between the same parties. The law of this State was fully and exhaustively reviewed and settled by Judge NAPTON in Kimmel v. Benna, 70 Mo. 52, and has since been adhered to in numerous cases. [Sutton v. Dameron, 100 Mo. 141; Speed v. Railroad, 163 Mo. 111; Crowl v. Crowl, 195 Mo. 1. c. 345, 346.] In the case of Speed v. Railroad, it was expressly ruled that a judgment for a defendant in an ejectment case tried in a Federal court is no bar to a subsequent ejectment between the same parties for the same land whether the title and defenses be the same or not. Accordingly, it must be held that the third instruction requested by the defendants and refused by the court was properly denied for the reason that the judgment in favor of the defendants in the United States Circuit Court did not have the effect to vest the lawful possession of the land in controversy in the defendant A. B. Perkins as therein asserted. As the judgment in the circuit court of the United States was no bar to a subsequent ejectment by the plaintiffs for the same land against the defendants, neither can it be pleaded as a bar to this action to have the title declared and adjudicated in plaintiffs as against the defendants.

II. This brings us to the remaining defense of the Statute of Limitations of ten years interposed by the defendants in this case. Having already determined that the plaintiffs have the legal title to the lands in controversy as the grantees of the title conveyed by Stoddard county to Ringer April 28, 1869, it follows that unless the defendants have established title to the land by adverse possession for ten years the legal seizin and possession of the land followed the legal title and plaintiffs are entitled to a decree to the same. [Bradley v. West, 60 Mo. 33.] The evidence in brief as to the actual possession of this land consisted on the part of the defendants as well as the

plaintiffs of proof that in 1893 the defendant A. B. Perkins built a small house upon a portion of this land and placed one John Ware in possession thereof and Ware resided in this house on the land for some two or three months, when he left it, the house was removed by a third party, and after that neither Ware nor defendant Perkins were ever in actual possession of the land. On the other hand there was. evidence that one Tramble built a house at one time on a part of section 9 by mistake and never claimed title to any portion of section 9 until after the United States Court decided the case of Stone v. Perkins in favor of the defendant.

Some time in 1899 Tramble quitclaimed to Kitterman. Tramble's and Kitterman's claim, however, was only to forty acres in section 9. It is too plain for discussion that this evidence did not establish a continuous, uninterrupted and adverse possession of the land by the defendant Perkins by virtue of the Ware occupation of the land. There was also evidence that the defendant Perkins sold the timber· to two parties and that they cut a large portion thereof. To sustain their claim of adverse possession the defendants insist that their taking of the actual possession of the land in December, 1892, and putting Ware in possession to hold the same for them commenced the running of the Statute of Limitations in their favor and that the law presumes the continuance of such adverse possession upon the principle that when the existence of a state of facts is once established by proof the law presumes such state of things to continue to exist as before until the contrary is shown, but this contention ignores an equally well settled principle of law that presumptions must yield to facts and are only indulged in the absence of facts to the contrary. The assertion by the defendants that their possession under color of title, to-wit, their possession under the Miller patent, which was taken subsequently to and with full notice of the

prior Ringer patent, may be discontinued after a month or a year and that thereafter the constructive possession of the land would follow their color of title instead of the true title and after ten years the real owners would be barred by the Statute of Limitation, is in plain violation of the well established law of this State. In Turner v. Hall, 60 Mo. l. c. 275, Judge Hough, speaking for this court, said: "It would be a new and dangerous doctrine to hold that a possession under color of title may be discontinued after a year or a month or a week, and that thereafter the constructive possession of the land would follow the color of title instead of the true title." On the contrary all the authorities in this State hold that the act of possession must be visible and continuous for the requisite period of ten years in order to create the bar. The circuit court found, and we think the evidence abundantly supports it in so doing, that there was no adverse possession by the defendants of this land for ten years, and therefore the claim of adverse possession predicated alone upon the judgment of the United States Circuit Court, and the temporary occupation by Ware of a part of the land for not exceeding three months and the presumption that this possession was continued in face of all the evidence to the contrary, is utterly untenable.

In this connection it may be well to consider the objection to the second instruction given by the court in which it stated that the prior legal title of the plaintiff must be sustained, "notwithstanding the jury may find and believe from the evidence that one John Ware had a temporary building or structure on said premises for a few months and occupied the same which he abandoned after occupying the same for a few months and said structure was removed soon after he abandoned the same." It must be borne in mind that this cause was tried before the court, without the intervention of the jury, as to this first count. It has been uniformly

ruled that the trial of title under section 650 is for the court and not for a jury and hence this declaration of law could in no manner have affected the rights of the parties in the determination of their title. As to the objection that it was a comment upon the evidence, as it was a trial before the court this comment could in no wise have misled any one and was strictly within the evidence in the case. And it may also be observed that the defendants' claim of possession by the reason of payment of taxes and cutting the timber on the land did not constitute adverse possession but were only acts tending to show claim of ownership. [Carter v. Hornback, 139 Mo. l. c. 245.] In our opinion the circuit court properly adjudged the title to this land in the plaintiffs as against the defendants.

III. We are thus brought to a consideration of the action of the court upon the second count in the petition. After having decreed the title of the land to be in the plaintiff, Samuel F. Campbell, the court then proceeded to try the action of trespass for the cutting of timber on the said land from 1896 up to the commencement of the action alleged in the second count of the petition, to-wit, that on or about the first day of October, 1896, and on divers days and divers times thereafter the defendants without leave wrongfully entered upon said section 9, of which the plaintiffs were then and there the owners, and did hire, command and order divers other persons to enter upon said premises, and did then and there cut down, destroy and take and carry away timber and trees, of the value of three thousand dollars. To this count the defendants, as already noted, pleaded first the five-year Statute of Limitation and the ten-year Statute of Limitation. This action was returnable to the March term, 1904, and the court gave the following two declarations of law on the question of trespass:

"The court declares the law to be that, unless it

finds and believes from the testimony that the plaintiff was in possession of the land in controversy on the 24th day of October, 1903, and continued in such possession during the time in which the trespass is alleged to have been committed, he cannot recover in this action, and the finding will be for the defendant.

"The court declares the law to be that an action for trespass will not pass to the grantee by a conveyance of the land upon which the alleged trespass was committed and unless the plaintiff has shown by the testimony a lawful assignment of the cause of action herein to himself he cannot recover and the finding will be for the defendant."

The testimony on the part of the plaintiff was to the effect that he owned one-half of this land in February, 1897, under a contract, and he acquired the other half in 1903; that he acquired this title from Mrs. Carrie Thurber, the wife of John T. Thurber. On cross-examination he stated that he took an assignment of this cause of action. There was no proof or at least nothing upon which a judgment could be rendered as to any timber cut by the defendant prior to 1898. The testimony tended to prove that after the 26th of October, 1898, Nimmons and Bennett cut what is known as headings on said land and took away the timber therefrom for a period of about three years to the amount of three thousand dollars in value. The testimony on the part of the defendant was that A. B. Perkins sold the timber on this land to Nimmons and Bennett for two thousand dollars, that after he sold to them he did not cut any of the timber himself, nor direct them to cut off any of it after he had sold it, but that Nimmons and Bennett cut the same with his consent under his contract with them and paid for it. That the date of the sale was April 25, 1898. There is no formal written assignment of the cause of action for the trespass from Mrs. Thurber to the plaintiff Samuel F. Campbell. All that appears on this subject is as follows:

"Q. You have an assignment of Carrie E. Thurber's interest or cause of action, is that it? Ans. Yes, sir." Neither is the bill of sale of the timber from Perkins to Nimmons and Bennett of date April 25, 1898, set out in the record, although the record does show that the plaintiff offered the record of the said bill of sale in evidence and when offered, the court said: "Read it and I will see what it is." When the plaintiffs proceeded to make their proof upon the second count, the defendants objected to the introduction of any testimony, for the reason that this was an action sounding in tort or trespass and could not be joined with a suit to quiet title, but this objection was overruled and the defendants saved their exceptions.

As to this misjoinder it was apparent on the face of the petition and by failing to demur for this cause the defendants must be held to have waived it. [Blair v. Railroad, 89 Mo. l. c. 394; secs. 598 and 602, R. S. 1899.

Under this count it is insisted, first, that there is no evidence upon which judgment for the plaintiff could be based. It is conceded by the learned counsel for the defendants that if plaintiffs had constructive possession of the land at the time the timber was cut by defendant by reason of his ownership of the title thereto he may maintain trespass in the absence of adverse possession thereof by the defendant. When a party has the legal title to land not in the actual occupancy of another he is presumed to be in the possession so as to maintain trespass against the wrongdoer. [Ware v. Johnson, 55 Mo. l. c. 503.] And as the evidence in this case before the court negatived the adverse possession of the defendant and the court so decreed on the first count in the petition, it is plain that this objection to the right of the plaintiff to recover because they had no possession of the land sufficient to maintain trespass cannot be sustained. We have already held in the examination of the evidence on the

first count that the pleadings and judgment in the Federal court did not establish the legality of the defendants' possession of the land. The case of Estes v. Nell, 140 Mo. 639, does not support the defendants' position in this case.

IV. As to the claim that there was no proof of an assignment of Mrs. Thurber's interest or right of action for the trespass prior to her conveyance of the land to Campbell, the plaintiff herein, we have already recited the evidence brought out by the defendant himself that she had assigned this cause of action to the plaintiff, and no objection was made to the form of this proof at the time and it is too late now to object that the formal written assignment was not preserved in the record.

V. The defendants complain of the court's refusal to give the third instruction requested by them. That instruction was in the following words:

"The court declares the law to be that the effect of the judgment in ejectment, in the suit of W. B. Stone v. Amos B. Perkins, rendered in the District Court of the United States for the Eastern District of Missouri, in favor of said Amos B. Perkins (the same not having been set aside or reversed) was to vest the lawful possession of the land in controversy under color and claim of title in said Amos B. Perkins from the date of the filing of the petition in said cause, to-wit, the year, March, 1893, and that, in the absence of proof to the contrary, said lawful possession of said land has presumptively continued in said Amos B. Perkins and his grantee from said year 1893, down to the date of the filing of this suit, to-wit, October the 24th, 1903, a period of ten consecutive years, and the finding will be for the defendant, unless the court further finds from the testimony that said Perkins abandoned, or intended to abandon, the possession thereof before the institution of this suit, and, in this connection,

the court declares the law to be that failure on the part
of said Perkins to actually occupy said land for any
number of years (in the absence of actual occupancy
thereof adverse to him) is no evidence of abandon-
ment, or intention to abandon said land upon his part.''

We think it is entirely clear that the judgment of
the circuit court of the United States in the ejectment
cause brought in that court by W. B. Stone against the
defendant A. B. Perkins did not have the effect of
vesting the lawful possession of this land in the de-
fendant Perkins, nor did it furnish a basis for the pre-
sumption that the possession of said land continued
in the defendant A. B. Perkins from the year 1893
down to the filing of this suit on October 24, 1903. As
already said, this presumption necessarily yielded to
the proof that the defendants had not been in adverse
possession of the land for a period of ten consecutive
years, as required by the statute in order to vest title
in them by adverse possession, and the court found
that the defendants had not been in such adverse pos-
session for ten years. In fact the whole testimony
tended to show that the defendants only had possession
of a very small portion of the land for about three
months in 1893, and never had any possession after
that time, and the court committed no error in refusing
this declaration of law, because it was not supported
by the evidence.

A question of practice has suggested itself to us
by the forms of the judgments entered on the two
counts on different days, but upon consideration we
have reached the conclusion that the two entries may
be and should be treated as one final judgment, as our
statute, sections 694 and 773, Revised Statutes 1899,
clearly indicates should be done before the entry of the
final judgment in a cause. Under our code the circuit
courts can administer both legal and equitable rights
and remedies when necessary in the same civil action
and the trial court is armed with discretionary power

to direct separate trials where the nature of the issues on the pleadings require them. So that it would have been better for the court to have simply made its findings on the first count and deferred entering its final judgment until it had also tried the second count and then entered one final judgment as the statute evidently contemplated.

Upon a full consideration of all the exceptions of the defendants, we are of the opinion that there is no reversible error in the record and the judgment is accordingly affirmed. *Burgess* and *Fox, JJ.,* concur.