78

**HABAN, Plaintiff-Appellee v. SUBURBAN HOME MORTGAGE COMPANY et, Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County.

No. 3639.   Decided October 15, 1943.

Williams, Williams & Reynolds, Columbus, and Harry L. Hopwood, Columbus, for defendants-appellants.

A. Glenn McClelland, Columbus, for plaintiff-appellee.

**OPINION**

By HORNBECK, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court quieting the title of plaintiff to certain lots for which plaintiff held deed from a purchaser of the lots at tax sale who had a tax deed for said lots. We will set forth the errors assigned as they are considered.

1. The court erred in finding and adjudging that the plaintiff was in possession of the premises described in the petition at the time of the bringing of the action, and that plaintiff had a legal right to bring the action.

It is basic, that one of the essentials to maintaining the action to quiet title is that it be brought by a person in possession of the real property upon which it is alleged there is a cloud on the title. Two cases in Ohio have held that in an action to quiet title the plaintiff must plead and prove actual possession of the premises upon which it is alleged there is a cloud on the title. **Clark v Hubbard, 8 Ohio 382; Allegheny Oil Co. v Snyder, 12 O. F. D. 227.**

However, in Clark v Hubbard, supra, the court expressly found that the defendant, the cross-petitioner, was in actual possession of the land. In the instant case it fairly appears that neither the plaintiff nor the defendants are in actual possession. The possession of the plaintiff is constructive only.

The brief of appellants on the subject is complete and exhaustive and sets out citation of authorities from states outside Ohio in many of which the statutes controlling differ from Ohio. We have examined many of them and find them more confusing than helpful. The situation presented here is much like the facts found in **Harris v Paul et, 37 Oh Ap 206.** There the plaintiff claimed under a sheriff's deed and the defendant claimed under a prior deed made to his parents, he having succeeded to their title. The court discusses the question and states that both parties conceded that for the purposes of the case constructive possession, which follows the superior title, will satisfy the requirements of the statute. Judge Levine writing the opinion concludes that the question is an open one in Ohio. 2 C. J. 244, Sec. 531 is cited:

"Where two persons claim under color of title, but neither is in actual possession, the superior title will prevail. The mere fact that the holder of the junior title claims the land

can not operate to defeat the constructive possession and title of the holder of the senior title."

The real estate here involved is unimproved city lots. The action of ejectment suggested as the proper action, would not be available to plaintiff because it could not be averred and proved that the plaintiff was out of possession or that the defendant was in possession at the time the suit was commenced. It has been held in Ohio that where both parties claimed to be in possession in a boundary line dispute, an action of ejectment was not appropriate. **Ellithorpe v Buck, 17 Oh St 72.**

In Stone v Perkins, (Mo.), 117 S. W. 717, cited in 117 L. R. A., page 29, it was held that:

"Where, in a suit to quiet title brought under the Missouri statute, the defendant claimed by adverse possession, but was held to have had no such possession as would sustain the claim, and it seems that neither party was in actual possession at the time the suit was commenced, * * * the quiet title feature of the suit was triable by the court, * * *."

The annotator cites a case to the contrary, the Lee case, (Mo.), 111 S. W. 1151.

It is our opinion that in a suit to quiet title where actual possession is found in neither party, constructive possession is sufficient to support the action. Here the plaintiff claiming as a successor in title of the holder of a tax deed had prima facie title and, therefore, constructive possession.

The second assignment is that the court erred in not finding the tax deed from the auditor of Franklin county, Ohio, to be void because the necessary statutory requirements had not been followed prior to the execution and delivery of the deed. Specifically, it is asserted that the provisions of §5718-1 GC and §5751 GC, had not been observed preliminary to the forfeited land sale of the premises. We are cited to **Turney v Yeoman, 16 Ohio 24** and **Woodward v Sloan, 27 Oh St 592**, which hold that the prima facie validity of a tax deed may be overcome by proof that the prescribed requisites of statutes preliminary to the sale have not been observed.

Section 5718-1 GC, provides:

"Before making the certificates provided for in **Section 5718 of the General Code**, the county auditor shall submit the list of lands on the delinquent list and subject to foreclosure, to a board composed of the president of the board of county commissioners, the county auditor and the county treasurer,

and if, after **investigation,** in their judgment and discretion, such board is of the opinion that such list contains property or properties so certified which will not bring upon a sale a sufficient amount of money to pay all taxes, assessments and penalties thereon in arrears together with costs of foreclosure, such board may order the same to be omitted from the foreclosure proceedings as herein provided; and as to such land so ordered to be omitted, no' delinquent land tax certificate shall be made." (Emphasis ours.)

It is asserted that upon the evidence, the board, named in the quoted section, made no investigation as is contemplated in the statute. It appears that this board had available to it the assessed values of the lots under consideration, the amount of delinquencies and penalties, it learned from the prosecuting attorney the probable costs of foreclosure proceedings as related to said lots, and that this was about the extent of the investigation.

The statute makes no specific provision as to the nature and extent of the investigation to be conducted by the board. It did make an investigation as above and through the prosecuting attorney and took advantage of and acted upon the information thus provided. Further, it appears that the real estate had once been advertised and put up for sale under delinquent tax sale procedure, at which time there were no bidders, and at the sale wherein the lots were purchased, the entire group sold at public auction for $13.50 upon which there were assessments and penalties in an amount in excess of $100 on each lot.

In **Urban v Taylor et, 20 OO 508,** the court held that the board named in §5718-1 GC, had not there exercised judgment and discretion after investigation because it did not have before it all the pertinent facts concerning the value of the real estate proposed to be omitted from foreclosure proceedings. There the only evidence which the board considered was the tax value of the land under consideration and the amount of delinquent taxes thereon. The board in the instant case had more before it. The nature and extent of investigation required would necessarily vary under different factual situations. Where it appears that the probable value of the lands to be omitted from foreclosure is more than the delinquent taxes thereon, or even of probable value approximating the delinquency, it would seem to be appropriate to require other and

further investigation than would meet the demands of the statute in a situation such as developed in this case.

Also, in the light of subsequent developments, it is evident that no further investigation, no matter how complete or extended, would have produced any information which would have required a different decision on the part of the board respecting the advisability of omitting the lots in question from foreclosure proceedings. It does not appear that the board did not act under the §5718-1 GC, after **investigation.**

The third assignment of error is:

"Said court erred in not finding and adjudging invalid and of no legal effect the deed from the auditor of Franklin county, Ohio, purporting to convey said premises to said plaintiff, because the necessary statutory requirements had not been followed."

First the validity of the published notice of the sale of the lots in question is questioned in that the requisites of §5751 GC, have not been observed. This section, in so far as germane to our question, provides:

"The notice shall be advertised once a week for two consecutive weeks prior to the second Monday of March in two newspapers in the English language of opposite politics and of general circulation **printed in his county."** (Meaning the county of the auditor who receives the list of lands within his county from the Auditor of State.) (Emphasis ours.)

It appears that the notice here under consideration was inserted in the Ohio State Journal, the Reynoldsburg Press, and the Ohio State News and that all requisites of the statute have been observed except that part which we have emphasized, namely, "advertised * * * in two newspapers * * * printed in his county." The Reynoldsburg Press and the Ohio State News were not printed generally in Franklin county, but in Licking county. However, it is established that, as to the two issues in which the advertisements under consideration were carried, both newspapers were actually printed in Franklin county.

It is the claim of the appellant that the intent of the statute is that the printing contemplated means regular printing of the newspaper one week after another, and that com-

pliance may not be made by occasional printing of the newspaper in the county of the residence of the auditor, or the printing of the newspaper only on occasions when the legal advertising is carried. Appellee insists that the term "printed in his county" means published in his county and that "printed" is used synonymously with the word "published" as found in §5704 GC, which statute relates to the same type of legal publication as §5751 GC.

Section 5704 GC, after providing for certification by the county auditor of a list and duplicate thereof of delinquent lands in the county, further provides, that upon the observance of certain conditions therein set out

"Within thirty days after delivery of the duplicate the county auditor shall cause a list of the lands on such delinquent list and duplicate **to be published** once a week for two consecutive weeks in two newspapers of opposite politics in the English language published in the county and of general circulation therein." (Emphasis ours.)

The purpose of these statutes is identical, namely, to assure the widest publicity of the sale of the lots among the residents of the vicinity, i. e., the county wherein the lots are located, it being obvious that there would be more persons interested in the purchase of such lands or lots in the county where they are located than elsewhere. In this connection it is interesting to observe the difference in the two statutes if given literal interpretation. As to §5704 GC, it is required that the newspapers in which the advertisements are carried shall be of general circulation in the county where the lands are located, but in §5751, the provision is, that the ad be carried in newspapers of general circulation printed in "his county". It is apparent that strict compliance could be made with the provisions of §5751 GC, and the ads carried in a newspaper which would have very little circulation in the county where the lots were located. This follows because a newspaper may have general circulation but very restricted circulation in any one county.

It is probable that the legislature had in mind the same purpose in enacting §5751 GC as it had in enacting §5704 GC, as heretofore indicated. However, it would strain every rule of construction beyond all reasonable limits to read the words "printed" and "publication," which have well defined meanings, as being synonymous. Printing implies the mechanical

art by which type is imprinted upon the paper, whereas, publishing means the conveying of knowledge of notices. 50 C. J. 70. However, if it be urged that the literal meaning of the word "printed" be observed, in construing §5751 GC, then, no violence is done to the general purport of the statute, if it be held that its requirement as to the printing of the advertisements was observed respecting the lots here under consideration. There was literal compliance with the statute and both newspapers in which the ads in question were carried were actually printed in the county where the lots were located. The plan adopted can not be commended as observing the spirit of the statute. It is apparent that the two sections should be harmonized by legislation.

We believe a more reasonable interpretation of the proceedings incident to this sale is, the appellants may not be heard to urge that any substantial right of theirs has been invaded in the action taken by the authorities in carrying the advertisements in the two newspapers other than the Ohio State Journal. All of the papers in which the advertisements were carried had general circulation in the county where the lots were located. If the statute be given the construction contended for by appellants, it is inconceivable that they would nave any more certain notice or prospective purchasers more publicity as to the proposed sale than was assured by the advertisements as carried by the county auditor. If there has been any failure on the part of the county auditor to observe the full intendment of §5751 GC, it is inconsequential and utterly without effect on any material right of appellants.

Other errors are assigned but they raise no questions other than those which we have considered. We find no prejudicial error to the appellants in the judgment in this case. It will, therefore, be affirmed.

BARNES, P. J., and GEIGER, J., concur.