[Cite as *Stark Cty. Park Dist. v. Dickerhoff*, 2018-Ohio-4319.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STARK COUNTY PARK DISTRICT, | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| PATRICIA DICKERHOFF, ET AL., | : | Case No. 2017CA00231 |
| | : | |
| Defendants - Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Stark County Court
of Common Pleas, Case No. 2015-
CV-01786

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        October 23, 2018

APPEARANCES:

For Plaintiff-Appellee        For Defendants-Appellants

SARAH K. RATHKE        BRUCE L. INGRAM
Squire Patton Boggs (US) LLP        THOMAS H. FUSONIE
4900 Key Tower        DANIEL E. SHUEY
127 Public Square        Vorys, Sater, Seymour and Pease, LLP
Cleveland, Ohio 44114        52 East Gay Street, PO Box 1008
        Columbus, Ohio 43216-1008

RACHAEL A. HARRIS
Squire Patton Boggs (US) LLP
2550 M. St, NW
Washington D.C. 20037

*Baldwin, J.*

{¶1}    Appellants are Patricia Dickerhoof, individually and as trustee for the Gene L. and Patricia Dickerhoof Trust, Daniel Dickerhoof, individually and as Trustee for the Gene L. And Patricia Dickerhoof Trust, and Doug Dickerhoof, individually and as beneficiary of the Gene L. And Patricia Dickerhoof Trust. They appeal the July 31, 2017 decision of the trial court finding that appellee acquired title to the property, evidentiary rulings of the trial court, the verdict of the jury finding that appellants' adverse possession claim was not proven, and the trial court's denial of their motion to amend its orders to provide for access over the appellee's property.  Appellee is the Stark County Park District.

## STATEMENT OF FACTS AND THE CASE

{¶2}    In this case we review the results of a bench trial finding that the appellee acquired record title to a strip of land that bisected appellants' property and the results of a jury trial, whose verdict rejected appellants' contention they obtained title of the same strip of property through adverse possession.  The trial court ordered bifurcation of the claims because the quiet title action was a purely legal, equitable argument whereas adverse possession requires resolution of disputed facts. The bench trial preceded the jury trial as a practical necessity. If the court had determined appellee had not acquired title, the adverse possession claim would be moot.

{¶3}    The appellants, collectively referenced by the trial court as the Dickerhoof Family, came into possession of approximately 51 acres of real property in 1970.  Before they acquired title to the property, a railroad had established a line that ran through the farm, but the railway had been abandoned and was unused when the Dickerhoof Family

purchased the property. Appellants contend they cleared the property of scattered railroad ties, spikes and other debris, leveled the railroad bed and used the property as part of their farm beginning in 1972. They contend they have used it continuously, exclusively, openly and notoriously for farming related purposes for at least twenty one years prior to appellee purchasing the rail line.

{¶4} In 1997 American Premier Underwriters, the purported record owner of the unused railroad line, approached appellee about purchasing the strip of property that ran across appellants' and several neighboring properties. Appellee was interested in acquiring the property to add to its park program and began negotiations with American Premier Underwriters.

{¶5} Appellee purchased the property in 1997, paying $49,700.00 for this parcel and several others to extend what appellee describes as the Iron Horse Trail, a recreational use trail. Appellee encountered delays in obtaining the proper legal description and survey due to the nature of railroad lines and how railroads typically described the property they acquired. The deed for the parcels was filed after the surveys were completed in 2001.

{¶6} The purchase did generate some controversy when it became known that the American Premier Underwriters, Inc., was auctioning many parcels, but that the strip that crossed the appellants' property would not be included in the auction. Gene Dickerhoof, predecessor in title to the appellants, was disappointed to discover that the parcel that divided his land was not part of the auction and that it had been purchased by appellee. Gene Dickerhoof later retained an attorney, John Morris, who contacted the appellee's Director, Robert Fonte, and contended that because the property was subject

to a reversionary clause in the original deed to the railroad, his client was the owner of the property. He threatened legal action and sent a second letter demanding a response, but curiously did not mention adverse possession and did not initiate any legal action.

{¶7} The Park Director, Robert Fonte and Gene Dickerhoof's attorney, discussed the claims of the parties for four years, but reached no resolution.

{¶8} On August 28, 2015, appellee filed an action to quiet title in the property and, on November 16, 2015 filed an amended complaint including a claim to quiet title and a claim for declaratory relief.  Appellants filed an answer and counterclaim, denying that the appellee had title and requesting that the court grant them an order to quiet title, declaratory relief and that acquired title to the property through adverse possession. Appellants asserted in an affirmative defense that, in the alternative, they had a prescriptive easement to conduct farm activities on the subject property and that they had an easement by necessity. Appellants also contended that the deed that created the disputed corridor, referenced as the Styers deed, contained a reversionary clause that was triggered when the railroad abandoned the line. Title to the property reverted to their possession as a result, by their interpretation of the deed. Appellants and appellee filed motions for summary judgment and both were denied. Appellants filed several motions in limine that were addressed by the trial court.

{¶9} The Trial Court determined that the parties were not entitled to a jury for the quiet title action, so a bench trial was scheduled to be followed immediately by a jury trial regarding the adverse possession claim.

{¶10} The bench trial was conducted on July 24, 2017 and the only witness to testify was Robert Fonte, appellee's Executive Director. During his tenure with appellee

he participated in the acquisition of the subject property and was able to identify several exhibits that addressed ownership and location of the subject property. Appellee's exhibits included a title examination, a plat map completed by a registered surveyor and several deeds. Appellant had the opportunity to cross examine Mr. Fonte and objected to the admission of several exhibits for lack of foundation or because the documents contained hearsay statements. Appellants' objections were overruled with few exceptions.

{¶11} Appellants did not present any evidence or argument at the bench trial regarding their claim of quiet title or the existence, location, size or necessity of any easement. Appellants moved for dismissal, the motion was overruled and the trial court found that appellee held record title and that the Styers deed did not create a reversionary interest.

{¶12} The jury trial began the following day and was limited to appellants' claim of adverse possession. At the outset of the trial, the court explained to the jury that appellee "purchased this Railroad Corridor property in 1997 and it has been determined through a separate proceeding that the Park District is the titled owner of this Railroad Corridor property." (Transcript, Volume No. I, page 7, lines 15-20, July 25, 2017).

{¶13} Appellants' sole witness was Daniel Dickerhoof, son of Eugene Dickerhoof, the prior owner of the farm. Mr. Dickerhoof was four years old when his father acquired the property, and he lived in Columbus, Ohio for several years while he attended college, but he testified without hesitation about the use of the abandoned rail line by his family. He spoke at length about the railroad ties, spikes and other debris his family cleared from the line. The family removed cinders from the rail line and leveled the area so it could be

used for planting or pasture.  He testified that the family had part of the property leveled with a bulldozer in 1975 to further facilitate the use of the property and that the railroad bed was used for access to the pastures. He remembered that his family began planting in the northern section of the property in 1975 and the southern half of the property in 1978.

{¶14}  Mr. Dickerhoof's father installed barb wire fence to exclude pedestrians from the corridor after 1972, yet in 1978, bicyclists were using the property.  That fence has been altered over the years to allow for livestock to graze.  Daniel Dickerhoof testified that the corridor was now bounded by a fence and that he installed no trespassing signs at both ends of the corridor as it entered his property, and the fence and the signs were still present. Because the railroad bed has been leveled on the appellants' property, he claimed that there was a noticeable difference in the elevation of the corridor on the appellants' property as compared to the abutting properties.

{¶15}  Mr. Dickerhoof identified an aerial photograph of the property as well as a plat map to show the current state of the property at the purported location of the rail line. Mr. Dickerhoof admitted during cross examination that he was not aware of the fact that deeds conveying the property between Dickerhoof family members contained a reference to the abandoned rail line and that his family did not take any steps to remove that reference. He also acknowledged that the Dickerhoof family attorney was John Morris and that Mr. Morris had claimed title for his family, but not on the basis of adverse possession.

{¶16} The appellants provided no further evidence at the jury trial.  Appellee moved to dismiss the complaint by directed verdict and that motion was denied.

{¶17} Appellee offered the testimony of Robert Fonte and retired Judge R.R. Denny Clunk. Robert Fonte, Park Director, described the appellee's process of acquiring property as part of a long term plan for the appellee. The appellee, under the direction of Mr. Fonte, had previously purchased abandoned rail lines, so Mr. Fonte was familiar with the process as well as the difficulties associated with the purchase of railroad property.

{¶18} Appellee retained the services of a title examiner to confirm that American Premier Underwriters had authority to sell the property to the Park District. Thereafter the Park District purchased the property for $49,700 and retained a surveyor to provide a proper legal description. Due to the difficulty and complicated nature of the survey and the fact that seventeen parcels were involved, the survey was not complete until 2001. Mr. Fonte noted that the surveyor entered the properties to complete the survey, and to his knowledge, the surveyor had no difficulty entering the appellants' property and did not encounter any farming activity on the railroad corridor. The surveyor provided appellee a map showing the railroad corridor as it crossed the appellants' property.

{¶19} Mr. Fonte communicated with the attorney for appellants' predecessor in interest, Gene Dickerhoof, after the appellee had purchased the property. Had the appellee not purchased this property it would have been made available to the general public at auction. When American Premier Underwriters disclosed that the corridor had been purchased by the appellee, appellee was the subject of many complaints of underhanded tactics to obtain the property. Appellee conducted a well-attended town hall meeting in 1998 to address the objections and complaints and Gene Dickerhoof's attorney attended. Mr. Fonte was present and attempted to explain the appellee's actions and future plans, but his explanation did not satisfy John Morris, attorney for Gene

Dickerhoof. Attorney Morris complained that the original deed to the corridor contained a reversionary clause that was activated when the railroad abandoned the property. He repeated this position in a letter delivered to the appellee, but never contended that the Dickerhoofs held title by adverse possession. Mr. Fonte communicated with Mr. Morris regarding the Dickerhoof farm for four years, but the issue of adverse possession was never mentioned.

{¶20} Mr. Fonte met with the Dickerhoof family in 2009 and walked their property, including the railroad corridor. Mr. Fonte noticed that despite the appellants' assertion of use of the corridor for farm purposes, it was still identifiable as the railroad corridor. Mr. Fonte visited the property in the Spring of 2017 and took a photograph from the road looking toward the Dickerhoof property at the point of the corridor. When asked whether he was able to discern "what use the Dickerhoofs were making, if any, to the right of way" he replied "None". (Transcript, p. 474, lines 17-21) And, despite Daniel Dickerhoof's testimony that he installed "No Trespassing" signs and fence at the corridors, none was visible. He also did not notice any change in the elevation of the railroad corridor, rebutting Mr. Dickerhoof's testimony regarding the leveling of the railroad bed as it entered appellants' property.

{¶21} Retired Judge R.R. Denny Clunk testified on behalf of the appellee regarding his recollection of the Alliance Rotary Club's involvement with the railroad corridor on several parcels including the appellants' property. Judge Clunk was a practicing attorney in 1971 and a member of the Alliance Rotary Club. The Club planned to create a walking path from Alliance to Minerva, but the plan was delayed due to obstructions. The Club filed an action against the property owners, included Gene

Dickerhoof as a defendant, and requested a temporary restraining order. The property owners filed a counterclaim.  The temporary restraining order was granted and the case was dismissed in 1972.

**{¶22}** Judge Clunk walked the entire length of the corridor to determine what would be required to make it usable for the public.  The Rotary Club retained a bulldozer operator who plowed a path at least eight feet wide all the way through the corridor, including the Dickerhoof property, and the Club attempted to repair some bridges along the new path in the early 1970s.  Judge Clunk did note that the path was used by motorbikes and ATV's, but he admitted that the club ceased its efforts to create a public trail due to the time commitment required and the controversy over the path. Judge Clunk did not visit the rail line after 1972.

**{¶23}** Judge Clunk remained active in the community during the 1970s, and he believes he would have heard about the Dickerhoof's retaining a bulldozer to work on the path, but he did not. He also did not hear that the Dickerhoof's were farming the corridor. Finally, Judge Clunk identified a document created by him in 1970, a chronology of the 1970 litigation that contains a reference to a lease between Dickerhoof and the Railroad that was terminated by the railroad to allow the Rotary Club unrestricted access from Alliance to Minerva.

**{¶24}** At the conclusion of its case, appellee offered exhibits into evidence. Appellants objected to several on hearsay and foundation grounds, but most were admitted over appellants' objections.

**{¶25}** The jury returned a verdict for the appellee. While the jury found that the appellants had exclusively and adversely possessed the property for over twenty-one

years, it rejected the claim that appellants' possession was open and notorious. The trial court rendered judgment based upon the jury verdict on July 31, 2017 and completed findings of fact and conclusions of law regarding the bench trial.

{¶26} On August 11, 2017 appellants filed a motion to amend the July 31, 2017 judgments to include a finding that appellants were entitled to crossings over the subject property they claim were described in the Styers deed. Appellants also requested the court include Civ.R. 54 (B) statements of "no just cause for delay" because codefendants had not yet been dismissed from the case despite a reported settlement agreement.

{¶27} Appellee opposed that portion of the motion that requested a finding that appellants were entitled to crossing over the disputed property. Appellees also filed a motion to enforce the settlement agreement with the appellants' codefendants. While that motion was pending, the trial court denied the appellants' motion to amend the July 31, 2017 judgment stating: "that issue was never raised before this court, was not briefed by the parties, and was not addressed by the parties at either the bench trial or jury trial. Whether the existing instruments of record require the farm crossings to be built is not presently an issue before this court as having not been properly raised in a timely fashion." (Entry, October 11, 2017, Docket 112). On that same date, the trial court notified appellants' codefendants that they would be given the opportunity to show cause why judgment should not be rendered against them for failing to appear at the trial and failing to complete the purported settlement agreement that was represented to the court at trial. (Entry, October 11, 2017, Docket 113).

**{¶28}** The remaining parties dismissed all claims without prejudice on November 29, 2017 and November 30, 2017. Appellants filed a notice of appeal on December 22, 2017 and submitted five assignments of error:

**{¶29}** "I. THE TRIAL COURT ERRED IN NOT DISMISSING THE PARK DISTRICT'S QUIET TITLE CLAIM, AND SUBSUMED DECLARATORY JUDGMENT CLAIMS, AGAINST THE DICKERHOOFS FOR LACK OF STANDING AT THE TIME PLAINTIFF FILED ITS COMPLAINT AGAINST THE DICKERHOOFS."

**{¶30}** "II. THE TRIAL COURT ERRED IN FAILING TO DISMISS THE PARK DISTRICT'S CLAIM AND INSTEAD RULING THAT THE PARK DISTRICT HOLDS RECORD TITLE TO THE ABANDONED RAILROAD CORRIDOR FOLLOWING THE BENCH TRIAL."

**{¶31}** "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING INADMISSIBLE EVIDENCE DURING THE JURY TRIAL."

**{¶32}** "IV. THE JURY'S VERDICT IN FAVOR OF THE PARK DISTRICT REGARDING THE DICKERHOOFS' ADVERSE POSSESSION CLAIM WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶33}** "V. THE TRIAL COURT ERRED IN REFUSING THE DECLARE THE RIGHTS OF THE DICKERHOOFS TO CROSS THE DISPUTED PROPERTY.(SIC)"

## ANALYSIS

**{¶34}** The first two assignments of error address the results of the bench trial that was limited to the issue of the quiet title claims and defenses. Assignments three, four and five claim error at the jury trial regarding adverse possession only. We begin our review with the first two assignments.

**FIRST ASSIGNMENT OF ERROR**

**{¶35}** Appellants assert, in their first assignment of error, that the trial court erred by refusing to dismiss appellee's complaint for quiet title for lack of standing, citing the language of R.C. 5303.01 which states in part that: "An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest." Appellants cite to our decision in *Paden v. Miller,* 5th Dist. Guernsey No. 00CA29, 2001 WL 1782890, where " [w]e agree[d] with the trial court. Appellant lacked standing to pursue an action to quiet title pursuant to R.C. 5303.01. Because the statute requires either possession or a claim of an interest in remainder or reversion, we find summary judgment was properly granted as to Appellant's action for quiet title." *Id* at *3.

**{¶36}** We review the interpretation of R.C. 5303.01 de novo with no deference to the trial court's analysis. *Brennaman v. R.M.I. Co.*, 70 Ohio St.3d 460, 1994-Ohio-322, 639 N.E.2d 425 (1994), *amended,* 71 Ohio St.3d 1211, 643 N.E.2d 138 (1994). Further, an unambiguous statute must be interpreted so as to give effect to the words explicitly used by the legislature, rather than deleting words or inserting words that were not used. *State v. Taniguchi*, 74 Ohio St.3d 154, 1995-Ohio-163, 656 N.E.2d 1286 (1995).

**{¶37}** We agree that R.C. 5303.01 generally requires that the party seeking the relief of quiet title be in possession to establish standing to proceed. Appellee contends that its constructive possession of the real property was sufficient to satisfy the requirement of the statute. The cases cited by appellee support recognition of constructive possession only when the evidence of actual possession is, at best, inconclusive. In *Village of Procterville v. Boston*, 4th Dist. Lawrence No. 1730, 1985 WL

9484 the Court noted that "[t]he plaintiff in an action to quiet title must be in possession, either actual or at least constructive, of the land at issue in order to maintain the action." *Id* at *4. That court relied on the holding in *Haban v. Suburban Home Mortg. Co.*, 40 Ohio Law Abs. 78, 57 N.E.2d 97 (2nd Dist.1943) for its definition of "constructive possession." However, that Court held that "where actual possession is found in neither party, constructive possession is sufficient to support the action." *Id* at 98. The record in the case at bar does not establish the condition precedent of actual possession being in neither party, so constructive possession provides no relief for appellee.

{¶38} Appellee relies on the case of *City of Cleveland Hts. v. City of Cleveland*, 8th Dist. Cuyahoga No. 79167, 2001 WL 1400015, to support its argument  that the reference in R.C. 5303.01 to political subdivisions of the state establishes standing for appellee. The relevant section of the Code states: "Whenever the state or any agency or political subdivision thereof has, or appears to have, an interest in real property adverse to the person in possession claiming the right thereto, the state or such agency or such political subdivision may be made a party in any action brought under this section."  This court is not convinced this language provides standing to the appellee as it states that an "agency or political subdivision *** **may be made a party** in any action brought under this section" (emphasis added) but it does not state that the political subdivision may bring the action. The case cited by appellee is not helpful as the plaintiffs in that case were political subdivisions, but they were in possession of title to the property, and, in fact, were attempting to foist title onto a different political subdivision. Therefore, that case provides no support for appellee's argument that the cited section of R.C. 5303.01 grants standing to appellee.

{¶39} Finally, appellee contends that the appellants asserted their own quiet title claim as well as a request for declaratory judgment in a counterclaim and that those claims were adjudicated by the court. Appellee contends, relying on *Slane v. Mentz*, 10th Dist. Franklin No. 77AP-155, 1977 WL 200365 that the nature of a civil action established by the complaint may be changed by an affirmative defense or counterclaim of the defendant. The Supreme Court of Ohio addressed similar circumstances and concluded:

> It is argued by counsel for the defendants in error that the petition and proof of plaintiff below were insufficient to sustain an action **187 to quiet title, because of failure to plead and prove possession. A complete answer to that contention is that Wells and Keith in their cross-petition asked for the same relief, and the cause was actually heard upon their cross-petition. The defendants thereby sought to sustain their own affirmative action to quiet title, which plaintiff resisted successfully in the trial court, but unsuccessfully in the appellate court.

*Logan Gas Co. v. Keith*, 117 Ohio St. 206, 214, 158 N.E. 184, 186–87, 5 Ohio Law Abs. 422 (1927). See also *W.C. McBride, Inc., v. Murphy*, 111 Ohio St. 443, 446, 145 N.E. 855, 856 (1924) and *Village of Procterville v. Boston*, 4th Dist. Lawrence No. 1730, 1985 WL 9484, *4, fn 1.

{¶40} We hold the *Logan Gas Co* precedent is applicable to the case at bar. The appellants, in their counterclaim, asked for an order quieting title, so this cause was actually heard upon the counterclaim. The trial court adopted that analysis in its July 31, 2017 Memorandum of Decision where it concluded that "additionally, the court notes that

defendants asserted a counterclaim in this case which included a claim for quiet title under R. C. §5303.01, so this court has both the authority and the obligation to render a decision on the quiet title action regardless of whether this court treated it as an action by plaintiff against defendants, or the reverse." (Memorandum of Decision with Findings of Fact and Conclusions of Law Following Bench Trial, July 31, 2017, page 5, Docket 99)

**{¶41}** For the forgoing reasons, we find the court did not err in rendering a decision regarding the quiet title action and appellants' first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

**{¶42}** Appellants argue, in their second assignment of error that the trial court erred by failing to dismiss the appellee's claim, finding that the appellee holds record title to the abandoned railroad corridor, and that a purported reversionary clause did not defeat appellee's title. The appellants' assignment of error attacks both the trial court's finding that appellee received title to the property and the court's interpretation of the alleged reversionary language in the Styers deed. With regard to the trial court's application of the law to the facts, we review the record to determine if the judgment was against the manifest weight of the evidence. With regard to the interpretation of language of the deed, our review is de novo. *Maxwell v. Fry*, 12th Dist. Butler No. CA2007-11-284, 2009-Ohio-1650, ¶ 12.

**{¶43}** The appellee has the burden to prove that it holds title to the disputed property. *Carson v. Second Baptist Church*, 10th Dist. Franklin No. 09AP-922, 2011-Ohio-1025, ¶ 14. Appellee relied upon the testimony of Robert Fonte, Director of appellee, and his identification and discussion of several exhibits to establish appellee's title. Exhibit 1 was the starting point for the chain of title. This exhibit, described throughout the bench

trial and the jury trial as the Styers deed, described the strip of property transferred from Mary and James Styers to Cleveland, Youngstown and Pittsburgh Railroad Company. This deed was extensively discussed by Mr. Fonte and admitted into evidence without objection at the bench trial. Appellee used other exhibits to demonstrate it had received title to that strip of property from American Premier Underwriters in 1997.

{¶44} Mr. Fonte identified the deed appellee contends conveyed the disputed property to it as Exhibit 21. Mr. Fonte was permitted to testify that this deed described the property that was purchased from the railroad and that with the delivery of the deed, appellee gained title. Mr. Fonte reviewed portions of Exhibit 21 with counsel and confirmed that portion of the railroad corridor described in this exhibit extends from Louisville Street to Salem Church Street, corresponding to the roads that border appellants' property where the rail line enters and exits as reflected in appellee's Exhibit 41.

{¶45} Appellee next offered Exhibit 14, the title examination for the subject property commissioned by appellee. Mr. Fonte explained that appellee typically obtained title examinations to insure that the seller has the right to transfer the property and that the title exam in this case confirmed that American Premier Underwriters, Inc. could convey the subject property to appellee. Mr. Fonte noted that the title examination traced ownership of the property back to the Styers deed which was cited by its volume and page number within the examination. Then, after discussing the need for a survey, the process of obtaining a survey and the complications caused by the fact the subject was railroad property, Mr. Fonte identified a copy of the plat and survey completed by Constitution Land and Surveying, Ltd, at appellee's request, marked as Exhibit 22. In

Exhibit 22, Mr. Fonte identified the portion of the property that is the subject of this litigation as it passes through appellants' property. Mr. Fonte confirmed, without objection, that the property description in the corrected quit claim deed, Exhibit 29, accurately described the property shown in Exhibit 22. He specifically identified Item 10, page 4 of Exhibit 29 as a description of the intersection of the railroad with the appellants' property.

**{¶46}** Mr. Fonte explained that the title examination, the survey and the parcel descriptions all refer to the same properties described in the Styers deed and the deed that conveyed title to the appellee.

**{¶47}** Mr. Fonte described a letter he received from Attorney John Morris in 1998 after appellee purchased the property. Attorney Morris asserted his clients, appellants' predecessor in title, held title to the property due a reversionary clause that was triggered by the abandonment of the rail line. Mr. Fonte identified Exhibit 17 as the letter and acknowledged that he spent four years talking with Mr. Morris about the Dickerhoof property and the rail line without reaching an agreement. Mr. Fonte confirmed that the letter contained a reference to the Styers transfer of the corridor to the railroad by reference to Exhibit 1, the Styers deed, and he testified the property described in the letter was the same property that was the subject of this case.

**{¶48}** Appellee offered several exhibits at the conclusion of its case, including the title exam, the survey and the letter from Attorney Morris. Appellants objected to the admission of those exhibits citing a lack of foundation and a violation of the hearsay rule. We find the appellee provided sufficient foundation and that the documents are exempt from the hearsay rule.

**STANDARD OF REVIEW**

**{¶49}** The trial court has discretion regarding the admission of evidence and "we give further deference to a judge's decision when the evidence is introduced in a bench trial." *State v. Fautenberry*, 72 Ohio St.3d 435, 439, 650 N.E.2d 878 (1995). Unless the record indicates otherwise, the judge is presumed to have considered only admissible evidence." *Cleveland v. Welms*, 8th Dist. No. 87758, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 27.

**{¶50}** As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). It is well settled that a trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice. *Rigby v. Lake Cty.,* 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). Moreover, error predicated on an evidentiary ruling does not warrant reversal of the trial court's judgment unless the court's actions were inconsistent with substantial justice and affected the substantial rights of the parties. Evid.R. 103(A); Civ.R. 61. *Poppy v. Whitmore,* 8th Dist. Cuyahoga No. 84011, 2004-Ohio-4759, ¶ 38.

**EVIDENCE RULE 803(15)**

{¶51} Appellant objected to exhibits claiming their consideration was prohibited because they contained hearsay or lacked foundation.  The critical exhibits offered by appellee, including the title examination and the survey are documents that purport to establish or affect an interest in property and whose statements are consistently relevant to the purpose of the document.  The record contains no evidence to establish that dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document. Consequently, these documents are exempt from the Hearsay Rule pursuant to Evid. R. 803(15) which states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.

{¶52} This Rule has been the basis of holdings that personal pension account records were not barred by the hearsay rule, *Yasinow v. Yasinow,* 8th Dist. Cuyahoga No. 86467, 2006-Ohio-1355, ¶ 83, and that documents that would otherwise be considered hearsay may be used to prove chain of title regarding patent assignments. *Embs v. Jordan Outdoor Enterprises, Ltd.*, S.D.Ohio No. 2:03CV895, 2005 WL 2250681, *4 (Addressing the application of the identical language in the Federal Rules of Evidence).

See also *Wells Fargo Bank v. Maxfield*, 12th Dist. No. CA2016-05-089, 2016-Ohio-8102, 75 N.E.3d 864, *cause dismissed sub nom. Wells Fargo Bank Natl. Assn. v. Maxfield*, 149 Ohio St.3d 1460, 2017-Ohio-5540, 76 N.E.3d 1232, ¶ 59 (Exempting a Corrective Mortgage Assignment).

{¶53} The comments to the Rule note "[t]he rule is consistent with prior Ohio law" and provide a list of examples including a particularly relevant case, *Garrett v. Hanshue*, 53 Ohio St. 482, 497 (1895), where a title abstract was admitted to prove title. We find that Rule 803(15) exempts the title examination and the survey from the hearsay rule.

### EVIDENCE RULE 803(8)

{¶54} The documents presented by appellee, including the title exam, the survey and the letters to Mr. Fonte in his role as the Park Director, qualify as "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth *** the activities of the office or agency *** ." Evid.R. 803(8). The Appellee Park District is a public entity, a status the appellants tacitly admit when they argue in their reply brief that status as a political subdivision does not grant standing to appellee. Mr. Fonte testified that the acquisition of this property is part of a long range plan of appellee and that appellee has acquired railroad property in the past. He testified that appellee commissioned the completion of the title exam to insure that the title could be transferred from American Premier Underwriters, Inc. and that the survey was ordered by appellee to satisfy requirements for an up to date and accurate description. Mr. Fonte testified to the receipt of letters from an attorney representing Gene Dickerhoof, appellants' predecessor in title, objecting to the use of the Dickerhoof property for Park District purposes and asserting a claim of title by reversion. The letters regarding the property,

title examination, and survey document the activities of the appellee, a public office, in the planning, negotiation and purchase of the railroad property. Nothing in the records shows or implies any doubt that the source of the records or other circumstances indicate lack of untrustworthiness, so we conclude that these exhibits qualify for the exception to the hearsay rule under Evid. R. 803(8).

**{¶55}** We also conclude that the testimony of Robert Fonte provided sufficient foundation for these exhibits. "The threshold for admission is quite low as the proponent need only submit "evidence sufficient to support a finding that the matter in question is what its proponent claims." *State v. Nixon,* 11th Dist. No. 2013-P-0098, 2014-Ohio-4303, 20 N.E.3d 404, ¶ 33. Mr. Fonte played a pivotal role in this transaction such that his testimony provided the jury a rational basis to find the documents submitted were what he represented them to be.

**{¶56}** The unrebutted testimony of Robert Fonte provided sufficient evidence to support the trial court's decision to find the appellee acquired title to the property. The description in the Styers deed, the acknowledgment of that description in the letter issued by the Dickerhoof family attorney, the title examination and the survey all support the conclusion that the appellee acquired title to the railroad corridor and we cannot find that this is an "exceptional case in which the evidence weighs heavily against" the courts' decision, State *v. Thompson, infra at* 387 and thus the trial court's decision is not against manifest weight of the evidence.

**REVERSIONARY PROVISION**

{¶57} Appellant next claims, still within the second assignment of error, the trial court erred when it did not find that the Styers deed contained a reversionary clause that was triggered when the railroad ceased using the strip of property that bisects their property. The Appellant states that the case relied upon by the trial court has been abrogated by the Ohio Supreme Court and contends the currently applicable precedent mandates a decision in their favor.

{¶58} The trial court relied on *Petition of Copps Chapel M.E. Church,* 120 Ohio St. 309, 166 N.E. 218, 7 Ohio Law Abs. 255 (1929) but shortly after the trial of this case, the Ohio Supreme Court abrogated the *Copps* requirement that the deed contain explicit language requiring the reversion upon the fulfillment of the condition. Instead, the Ohio Supreme Court held that the descriptive phrase, "so long as" or the words "during" or "until" when used in the deed could be sufficient to create a fee simple estate subject to a reversion. *Koprivec v. Rails-to-Trails of Wayne Cty.*, 153 Ohio St.3d 137, 2018-Ohio-465, 102 N.E.3d 444 (2018), ¶¶ 31-32. Appellant contends that the Styers deed, the purported root of title in this case, contains language that is sufficiently analogous to the language in *Koprivec* that a reversion is created.

{¶59} Appellee notes that the Court in *Koprivec* found that the deed before it did not create a reversion and that the language in the Styers deed is more similar to the language in the deed in *Koprivec*. Appellee contends we should come to the same conclusion and affirm the finding of the trial court.

**{¶60}** As this assignment involves the interpretation of the language of a deed and no factual issues, our standard of review is de novo. The relevant language of the Styers deed (appellee's Trial Exhibit 1) is:

Witneseth (sic) that said party of the first part [Mary and James Styers] . . . have granted, bargained, sold, aliened, remised, released, conveyed and confirmed, and by these presents, do grant, bargain, sell, alien, remise, release, convey and confirm unto the said party of the second part [Cleveland, Youngstown and Pittsburgh Railway Company], and to its successors and assigns forever, all that certain piece or parcel of land situate in the Township of Washington in County of Stark, in the State of Ohio, described as follows:

[Excerpted real estate dimensions of the property].

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate right, title, interest, dower and right of dower, prosperity, possession, claim and demand whatsoever of said party of the first part, both in law and in equity of in and to the above granted premises with the hereditaments and appurtenances. To have and to hold the above granted premises with the appurtenances and every part thereof, unto the said party of the second part, its successors and assigns, to their proper use and behalf forever for the use and purposes of the party of the second part for track and a roadway for said Company, and the proper

appendages to such track and roadway to conveniently operate said railroad, and for no other use or purpose. Provided always and these presents are upon this express condition, that the said party of the second part shall construct its railroad on said premises.

**{¶61}** The holding of *Koprivec* requires that we review the language in the deed for the phrase "so long as" or "as long as", the words "until" or "during" or some analogous language to determine whether a reversion has been created. We have reviewed the quoted language and the entire deed and no such language appears. The deed clearly describes a restriction on the use of the property, but does not expressly state or imply in any portion of the deed that a violation of that restriction would result in a reversion of the title of the property to the grantor or their successors. We find that no reversion has been created.

**{¶62}** Instead of a reversion, this language establishes a restriction or covenant regarding the use of the land. "A restrictive covenant is a "private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property, [especially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." *835 *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 28 (2002), citing Black's Law Dictionary 371 (7th Ed.Rev.1999). In the context of property law, a "covenant" denotes a contract that is either personal or "runs with the land." *Maasen v. Zopff,* 12th Dist. Warren Nos. CA98–10–135, 1999 WL 552747 (July 26, 1999), *3. Restrictions running with the land are "intended to limit the grantee's use of the land to specified purposes, with the object of protecting the interests of all landowners in the same allotment." *Id.*

{¶63} The deed contains language expressing the expectation that the grantee will use the property "to conveniently operate said railroad, and for no other use or purpose" but it contains no language qualifying the transfer of the property as being effective only for "so long as" the property is used to operate the railroad and we cannot add such language. The intention of the parties is clear and "the first rule of deed construction in Ohio is that when the parties' intention is clear from the four corners of the deed, we will give effect to that intention." *Koprivec, supra* at ¶29.

{¶64} Further, as noted by the trial court, the deed grants all rights to any reversion or reversions to the railroad. Consequently, even if we had found a reversion existed it appears that all rights to that reversion were conveyed to the railroad and to their successors in interest.

{¶65} For the forgoing reasons, we find that the trial court's decision was technically correct under the law that was applicable at the time the decision was rendered because the deed did not contain any express language containing a reversion. Under *Koprivec* we are obligated to review the language in the four corners of the deed for language that would support a reversion. When we do so, we find that the deed contains a restrictive covenant, analogous to the deed described in *Koprivec,* but no reversionary language. Appellant assertion regarding that issue is overruled and their second assignment of error is overruled.

## JURY TRIAL

{¶66} We now turn to appellants' assignments of error three through five, which concern only the rulings and decisions arising from the jury trial conducted to decide appellants' claim of adverse possession.

**THIRD ASSIGNMENT OF ERROR**

{¶67} In their third assignment of error, appellants contend the trial court received inadmissible evidence during the jury trial to their prejudice. Our standard of review is abuse of discretion. "The admission or exclusion of relevant evidence rests in the sound discretion of the trial court." *Sage, supra* at 180. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Wilmington *Steel Products, Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Moreover, error predicated on an evidentiary ruling does not warrant reversal of the trial court's judgment unless the court's actions were inconsistent with substantial justice and affected the substantial rights of the parties. Evid.R. 103(A); Civ.R. 61. *Poppy v. Whitmore*, 8th Dist. Cuyahoga No. 84011, 2004-Ohio-4759, ¶ 38.

{¶68} Appellants contend that the erroneous introduction of irrelevant and improper evidence led the jury to conclude that that the appellants' exclusive, continuous, and adverse possession was not open and notorious for twenty-one years. Appellants submitted a list of the alleged erroneously admitted evidence:

Various deeds from 1970-1993 regarding the transfer of the Dickerhoof Farm. See Trial Exs. 9, 10, 11; Tr. Vol. IV, at 547-548;

Testimony and documents related to the Park District's documentary "due diligence" prior to purchasing the railroad property. See Tr. Exs. 14, 22; Tr.Vol. IV, at 548-549, 554;

Letters from counsel representing Dan Dickerhoofs' father in 1998 and 1999 not expressly asserting adverse possession claim. See Trial Exs. 17, 20; Tr. Vol. IV, at549-550, 554;

A 1998 newspaper article about a meeting debating trails. See Trial Ex. 18; Tr.Vol. IV, at 550-551;

A 2004 deed regarding the transfer of the Dickerhoof Farm. See Trial Ex. 25; Tr. Vol. IV, at 555-556;

Testimony about how the Dickerhoofs did not expressly state an adverse possession claim to Mr. Fonte in 2009, Tr. Vol. III, at 443-444, that the Park District offered to "accommodate" the Dickerhoofs in 2009 id., at 471, and Mr. Fonte's impression of the disputed property in 2009, id., at 472-475;

Testimony about inconvenience to the Park District and public officials to prepare for trial. Tr. Vol. III, at 475-477.

{¶69} Appellants assert that the exhibits described in this assignment are irrelevant to the issue of whether appellants have provided clear and convincing evidence that they and their predecessors were in possession of the contested property and that their possession and use of the property was exclusive, continuous, open and notorious for twenty-one years prior to the appellee acquiring title.  We conclude appellants' focus is unduly limited and that the exhibits are relevant to the elements of adverse possession and the credibility of appellants' witness.

{¶70} Appellants' relied entirely upon the testimony of Daniel Dickerhoof to provide clear and convincing evidence for all elements of adverse possession, so his

credibility was paramount and subject to challenge by appellee. "Generally, a witness's credibility is put at issue whenever he or she testifies," *Redman v. Watch Tower Bible & Tract Soc. of Pennsylvania,* 69 Ohio St.3d 98, 1994-Ohio-514, 630 N.E.2d 676 (1994), and the credibility of a witness may be attacked.   Evid.R. 607(A). If the jury chose to discount any of Mr. Dickerhoof's testimony, appellants' claim could fail.   Appellee was cognizant of this issue, and presented evidence that the trial court could reasonably interpret as an attack on the credibility of Mr. Dickerhoof.

**{¶71}** Mr. Dickerhoof's testimony was based, in part, on his memory as a very young child. He was four years old when his family purchased the property and appellants are claiming that their possession began soon after that purchase. Mr. Dickerhoof moved from the property in 1990 and lived in Columbus for a period of time, so the appellants' sole witness was very young at the beginning of the critical twenty-one year time period and was absent from the property for some time during the end of that time.   Mr. Dickerhoof's absence from the property, his youth, in his lack of knowledge regarding deeds, letters and newspaper articles provides some evidence that Mr. Dickerhoof's knowledge of events and transactions regarding the disputed property was limited, unreliable and should be rejected.

**{¶72}** Appellants presented Mr. Dickerhoof's testimony to establish that their claim to the property vested through adverse possession prior to appellee's purchase in 1997. Appellee used deeds, letters from family attorneys and newspaper articles to challenge that assertion by demonstrating that Mr. Dickerhoof was unaware of the fact that appellants and their predecessors in title made no claim of adverse possession prior to this case but, instead, relied upon an allegation that a reversionary clause provided

appellants' title. He was also not aware of the deeds executed by Dickerhoof family members that continued to reflect the railroads interest in the corridor that bisected their property. The exhibits presented by appellee served to offer some evidence that Mr. Dickerhoof's knowledge was subject to gaps and that, consequently, his recollection regarding the appellants' possession and use may also suffer gaps.

{¶73} Appellants presented testimony describing what steps they took to incorporate the rail line into their farm and make it evident to the world that they own that parcel. Appellee offered several exhibits as evidence of actions the appellants did not take to notify the world of their claim. Appellants did not remove the description of the railroad corridor from their deeds, did not assert adverse possession through counsel, and included the corridor in a drawing submitted as an exhibit. (Dickerhoof Exhibit 2). The jury was entitled to receive all of this evidence, consider the credibility of the witnesses and the weight of the evidence and render a decision based on the same. For this reason, as well as the reasons discussed below, we find that the trial court did not abuse its discretion in admitting the evidence described by appellant in this assignment.

{¶74} Appellants contend that deeds that reflect the continued existence of the railroad line in the appellants' property (Exhibits 9, 10, and 11) were improperly admitted, yet they did not object to the presentation of the documents or testimony during the trial of the matter. Each document was presented to the witness and the relevant portions were read aloud to the jury without any objection by appellants. The title examination and the survey (Exhibit 14 and Exhibit 22) received virtually the same treatment by the appellants. When asked to identify Exhibit 14, appellants' counsel stated "objection, hearsay" but that objection was overruled. The witness then responded to questions

about the content and effect of the title examination without objection. The testimony regarding Exhibit 22, the survey, was interrupted by one objection, then the question was rephrased and answered without objection. The balance of the testimony regarding Exhibit 22 was not interrupted by any further objection.

**{¶75}** Because extensive testimony regarding exhibits was received without objection, admission of those exhibits over objection is not an abuse of discretion. *State v. Shaw*, 7th Dist. Jefferson No. 03 JE 14, 2004-Ohio-5121, ¶¶ 17, 18. Further, the deeds are relevant to demonstrate what actions appellant failed to take to make their use and possession more open and more notorious and the survey and title exam assisted the jury in understanding the timing of the purchase as it relates to the possession of the property by appellants.

**{¶76}** Appellant submitted a "continuing objection" to Exhibit 17, (the letter from John Morris to Robert Fonte) but the grounds for the objection are not clear in the record. Ultimately, that document was admitted only for purposes of impeachment. Appellee questioned Mr. Dickerhoof extensively about another letter from John Morris to Robert Fonte, Exhibit 20, but made no objection at the time the testimony was offered. We believe the testimony at trial was such that the subsequent admission of the document was not an abuse of discretion. *Shaw, supra.*

**{¶77}** Exhibit 18, a newspaper article regarding the "Packed Meeting" about the use of the rail line by the appellee was submitted to the witness and extensively reviewed before the jury without any objection.

**{¶78}** Exhibit 25, another deed that reflected the continued existence of the rail line in the legal description of the appellee's property, did bring an objection because it

was dated 2004, purportedly after the time for vesting by adverse possession had occurred. The Court overruled that objection and concluded that the date upon which title to the property may have vested was an issue for the jury to decide, though the trial court did make it clear that this ruling should not be interpreted as general approval of all evidence outside the time period described by appellants.

{¶79} Appellant submitted cases that it describes as prohibiting the introduction of post vesting evidence in adverse possession cases as irrelevant because title has already vested. While the cases affirm that the use need only exist for twenty-one years, the holdings in those cases do not stand for the proposition that all facts that might arise after the purported twenty-one year use are irrelevant and inadmissible. We cannot state that facts relevant to whether the use was continuous, exclusive, open and notorious for twenty one years will not arise after the expiration of the relevant time period. Further, evidence regarding the credibility of a witness can arise at any time and may be offered not to establish the elements of the claim, but to attack the witness's credibility.

{¶80} The Appellant next claims that the admission of testimony that appellee felt a need to defend its purchase, that its actions would have changed had appellants notified it of its adverse possession claim, that it had to prepare to rebut the appellants' claim that they paid property taxes on the disputed land and that the parties discussed an accommodation of the Dickerhoof's concerns at a 2009 meeting were inappropriately permitted. The latter issue was the subject of a long discussion at the bench among the trial court and the parties resulting in an agreed format for a question, so we are unwilling to consider any objection to that question. With regard to the other issues we find that even if we were to conclude this evidence was improperly admitted, "there is no reason

to apprehend that the improper or irrelevant testimony could have had any influence upon the jury." *Hovanec v. Ondak*, 71 Ohio Law Abs. 58, 60–61, 124 N.E.2d 774, 777 (8th Dist.1955). Unlike the party in *Pearstein, infra*, these matters were not presented in "great detail and to a considerable extent" *Pearlstein v. A.M. McGregor Home,* 79 Ohio App. 526, 528, 47 Ohio Law Abs. 615, 73 N.E.2d 106 (8th Dist.1947) but were only a minor part of two days of testimony. We cannot find that inclusion of this evidence impacted a substantial right. (Evid.R. 103(A)).

**{¶81}** The appellants next contend the trial court erred in allowing Park District to testify at length and introduce documents regarding their "due diligence" in purchasing the property and cites to Volume III pages 401-405 of the Transcript, but those pages contain no objection to the testimony contained therein. Appellants complain of the admission of the title exam, but only objected to the appellee asking the following:

> And why don't you go ahead and turn to Exhibit 14 in your binder. And can
>
> you tell us what Exhibit 14 is?
>
> MR. FUSONIE: Objection; hearsay.
>
> THE COURT: Overruled

**{¶82}** The trial court did not abuse its discretion in overruling this objection.

**{¶83}** Appellants also direct us to pages 405 to 411 of the transcript during which their counsel complained of the appellees reference to obtaining a title exam. Appellants did object and the trial court found that the appellees could introduce evidence regarding the process and timing of obtaining title. The timing of acquiring title was inadvertently emphasized by counsel for Appellant when he stated "The issue before the jury is whether there was adverse possession that vested prior to them obtaining the quit-claim deed."

(Page 406, pages 8-11). The trial court concluded the appellee could introduce the evidence to describe when and how they acquired title, but no more. We do not find this ruling an abuse of discretion.

{¶84} The Appellant next complains of the Court permitting the lack of public statement of adverse possession as evidence that the elements of adverse possession were not satisfied. We addressed the admission of the exhibits that appellee used to illustrate the absence of that information earlier and need not repeat our analysis here but incorporate it by reference. We note that appellants did not object to appellee's closing argument and we disagree with their characterization of the goal of the argument. Appellants suggest that the appellee argued that appellants were obligated to announce their adverse possession claim to the world to preserve it. In fact, the argument is an attempt to persuade the jury that the appellants and their attorney were aware of the law, and concluded that the adverse possession claim was not established by the facts. The trial court did not abuse its discretion by admitting the evidence or the argument, particularly in the absence of an objection to the argument.

{¶85} Appellant did not object to the argument regarding deeds at pages 586-587 of the transcript and we have previously addressed the issue of using the deeds as exhibits. The argument only makes the point that deeds announce the status of the property. As noted above, we find these exhibits are relevant to the credibility of the appellants' sole witness, and the issue of whether the use and possession was open and notorious and therefore, the trial court did not abuse its discretion in allowing its admission.

**{¶86}** Finally, because we find that the trial court did not err, we find that the cumulative error doctrine does not apply. In *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel*, 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶ 197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶ 103. Appellants cite the doctrine of cumulative error, but gives no analysis or explanation as to why or how the errors have had a prejudicial cumulative effect, but simply concludes that the jury verdict is evidence that the jury was misled.

**{¶87}** Further, where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter,* 5th Dist. Stark No. 2002CA00125, 2003–Ohio–1313, ¶ 37. To the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard,* 104 Ohio St.3d 54, 89–90, 2004–Ohio–6235, 818 N.E.2d 229, 270 at ¶ 185.

**{¶88}** For those reasons we cannot conclude that the trial court abused its discretion regarding the evidentiary rulings and the third assignment of error is overruled.

## FOURTH ASSIGNMENT OF ERROR

**{¶89}** In their fourth assignment of error, appellants argue that the jury's verdict was against the manifest weight of the evidence, relying solely on Daniel Dickerhoof's testimony about his family's use of the property and contending that the appellee offered no evidence regarding the use of the property from 1972 to 1997.

{¶90} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179, the Ohio Supreme Court distinguished the terms "sufficiency" and "weight" in civil cases, declaring that "manifest weight" and "legal sufficiency" are "both quantitatively and qualitatively different," in the same manner the Supreme Court previously held regarding criminal cases in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. The court found sufficiency of the evidence to be "a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. * * * In essence, sufficiency is a test of adequacy." *Eastley,* ¶ 11, citing, *Thompkins*, supra at 386 and *Black's Law Dictionary* 1433 (6th Ed.1990).

{¶91} By contrast, the weight of the evidence concerns:

the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.

*Eastley* at ¶ 12, citing *Thompkins, supra* at 387, and Black's, *supra* at 1594. (Emphasis omitted).

{¶92} A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment

rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610,614 1993-Ohio-9, 614 N.E.2d 742 (1993).

**{¶93}** The inviolate nature of the jury process and its authority as a fact finding body is affirmed by Section 3, Article IV, Ohio Constitution, as "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause" on appeal. However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, *supra*, at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against" the jury's decision. *Thompkins,* supra.

**{¶94}** Parties asserting adverse possession "must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years. *Grace v. Koch*, 81 Ohio St.3d 577, 1998-Ohio-607, 692 N.E.2d 1009 (1998). The Ohio Supreme Court has defined "clear and convincing evidence" as the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. *In re: Estate of Haynes*, 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23(1986); see, also, *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54(1990). While the appellants cite to time, money an effort invested in developing this property, "there are no equities in favor of a person

seeking to acquire property of another by adverse holding" *Grace, supra* at 880, citing 10 *Thompson on Real Property* (Thomas Ed.1994) 108, Section 87.05.

{¶95} The appellants focus on documents and testimony presented by appellee, contending that the trial court erred in admitting several exhibits and statements. We have previously addressed the admission of those exhibits and testimony and will not repeat our findings here. Appellant overlooks evidence that was presented without objection that the jury may have reasonably found of sufficient weight to conclude that the appellants failed to demonstrate that their possession and use of the property was open and notorious by clear and convincing evidence.

{¶96} Mr. Dickerhoof testified regarding the use of the abandoned railroad property for pasture and for planting and by his testimony suggested that the strip of property in question was indistinguishable from the surrounding area of the farm, urging the jury to conclude from that testimony that the use was open and notorious. When asked about photographs of the area, Mr. Dickerhoof insisted that he took photographs and gave them to his attorney but he admitted that none had been shown to the jury.

{¶97} Mr. Dickerhoof also testified that he had installed a fence and no trespassing signs at the points where the corridor crossed his property line, but no photographs of the signs or fence was offered. The jury could reasonably draw a negative inference from the failure to provide those photographs, particularly when the photographs were submitted to counsel, as evidence that the use was not clearly and convincingly open and notorious.

{¶98} The Dickerhoof family began planting the northern half of the property 1975 and the southern portion in 1978. This statement by Mr. Dickerhoof was never clarified

and may have been relied upon by the jury to conclude that the possession of the property did not become open and notorious until after 1978, far too late to establish adverse possession by 1997 when the appellee purchased the property.

{¶99} Further, the jury may have reasonably viewed the need to install a fence and no trespassing signs at the points were the corridor intersected the appellants' property border as evidence that after several decades the rail way line was still identifiable and that a view of the property would not clearly and convincingly show open and notorious use. The testimony that bicyclists were using the path in 1978, years after the Dickerhoof family purportedly began farming the property, may also raise doubts that the use was open and notorious. We have commented on Mr. Dickerhoof's youth during the first years of the critical time as well as his absence from the property during that time. These gaps also serve as a basis for a jury to doubt appellants have presented clear and convincing evidence that the use was continuous for twenty-one years.

{¶100} Counsel for appellee asked Mr. Fonte about his trip to the property in the Spring of 2017 whether he was able to discern what use appellants were making of the property. He replied "none."

{¶101} Judge Clunk did not hear any mention of the Dickerhoof's farming the corridor after his Rotary club pursued litigation to preserve the right to use it and then abandoned the project due to time constraints. He confirmed that he would have expected to hear about the appellants' use of the property if it had occurred. During his testimony he discussed the leases that were associated with portions of the corridor, providing evidence that the Dickerhoof's use may not have been adverse.

**{¶102}**     This testimony and evidence, if accepted by a jury, could lead to a conclusion that appellants' evidence was not clear and convincing.

**{¶103}**     We have reviewed the entire record, weighed the evidence and all reasonable inferences, considered the credibility of witnesses and after resolving any conflicts in the evidence, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed and a new trial ordered.  The appellants' fourth assignment of error is overruled.

## FIFTH ASSIGNMENT OF ERROR

**{¶104}**     In their fifth assignment of error, appellants assert the trial court erred by refusing to amend its entry of July 31, 2017 and declare the right of the appellants to cross the railroad line.   Appellants asserted a right to an easement, a prescriptive easement or an easement by necessity in the form of affirmative defenses. As previously noted, the appellants offered no evidence in support of its claims in the bench trial.  The record in the jury trial does not contain any reference to an easement or any right to cross the subject property.   After receiving the trial court's findings of fact and conclusions of law, the appellants petitioned the trial court to amend its decision to include a declaration of the appellants' rights to cross the subject property.

**{¶105}**     We have reviewed the record regarding the bench trial and the jury trial and find that it contains no testimony or exhibit in support of appellants' right to cross the railroad property. The Styers Deed (appellee's Trial Exhibit 1) does contain the following phrase immediately after the metes and bounds description of the property to be transferred: "Two farm crossings to be built for grantors at a convenience point [for] grantee [R. N.].'  Neither the intent of this phrase nor issues regarding the size, location

and limitations regarding the use of any crossing as well as whether any right existed after the appellee's acquisition of the property were addressed during either the bench trial or the jury trial.  The appellants not only did not present any evidence regarding the crossing, but they also did not make any specific request to the trial court to render such a decision at any juncture during either trial.

{¶106}    During the bench trial, the parties engaged in lengthy discussions and argument regarding several issues.  The trial court clearly asked the parties if there were other issues or matters to be discussed and with the exception of proffering testimony regarding possession of the property, the appellant offered nothing. This case was pending for nearly two years before the jury verdict and was vigorously prosecuted and defended, but, with the exception of the references in the appellants' a&nswer to the complaint, no clear reference to the need for a crossing over the property can be found in the record.

{¶107}    Appellants were seeking an order from the trial court regarding a matter that could have been brought to the court's attention at either trial, but was not. "To require a trial court to grant a defendant judgment as a matter of law on an issue never timely raised would fly in the face of fundamental rules of our adversarial system of trial, which place specific responsibilities on parties involved in litigation to shape the course of the trial." *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, ¶ 146, citations omitted. The trial court correctly decided this issue.  Appellants' fifth assignment of error is overruled.

**{¶108}**        For the forgoing reasons, the decisions of the Stark County Court of

Common Pleas are affirmed.

By: Baldwin, J.

Wise, John, P.J. and

Delaney, J. concur.